Denise HOLLABAUGH, M.D. *v.* ARKANSAS STATE
MEDICAL BOARD

CA 93-34                                    861 S.W.2d 317

Court of Appeals of Arkansas
Division I
Opinion delivered September 8, 1993

84

*Peel & Dunham*, by: *James Dunham*, for appellant.

*William H. Trice, III*, for appellee.

JOHN B. ROBBINS, Judge. Denise Hollabaugh, M.D., is a family practice physician in Dover, Arkansas. Following a hearing on March 12, 1992, the Arkansas State Medical Board found that Dr. Hollabaugh had violated Ark. Code Ann. § 17-93-409(7) (Repl. 1992) and the medical board's Regulation 2(4) by committing "gross negligence or ignorant malpractice" in prescribing excessive amounts of controlled substances and writing an excessive number of prescriptions for addictive or potentially harmful drugs for seven patients. The board placed Dr. Hollabaugh's medical license on probation for one year and directed that she obtain fifty hours of continuing medical education regarding pain management. The board also ordered Dr. Hollabaugh to refrain from writing Schedule II and III narcotics prescriptions for her patients and to submit to periodic monitoring by the medical board and the Arkansas State Pharmacy Board. Dr. Hollabaugh appealed the decision of the board to the Pope County Circuit Court, which affirmed the medical board's decision. Dr. Hollabaugh has appealed from the decision of the circuit court and argues that the medical board's decision is not supported by the evidence. We agree and reverse.

The rules governing judicial review of decisions of administrative agencies are settled and are the same for both the circuit and appellate courts. On review of an agency decision, the circuit court is limited to a review of the evidence to determine whether there was substantial evidence to support the decision made and whether it was arbitrary, capricious, or characterized by an abuse of discretion. *Deweese* v. *Polk County Children and Family Servs.*, 40 Ark. App. 139, 141-42, 842 S.W.2d 466, 467 (1992). On appeal, our review of the evidence is similarly limited. *Beverly Enters.-Ark., Inc.* v. *Ark. Health Servs. Comm'n*, 308 Ark. 221, 226, 824 S.W.2d 363, 365 (1992). When reviewing the evidence, we give it its strongest probative force in favor of the agency. *Id.* In order to establish an absence of substantial evidence, the appellant must show the proof before the board was so nearly undisputed that fair-minded persons could not reach its conclusion; the question is not whether the evidence supports a

contrary finding but whether it supports the finding that was made. *Id.*

Substantial evidence has been defined as valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion and force the mind to pass beyond conjecture. *Eckels* v. *Ark. Real Estate Comm'n,* 30 Ark. App. 69, 75, 783 S.W.2d 864, 867 (1990); *Arkansas Real Estate Comm'n* v. *Hale,* 12 Ark. App. 229, 233, 674 S.W.2d 507, 509 (1984). The reviewing court may not displace the board's choice between two fairly conflicting views even though the court might have made a different choice had the matter been before it *de novo. Fouch* v. *Alcoholic Beverage Control Div.,* 10 Ark. App. 139, 141-42, 662 S.W.2d 181, 183 (1983). Whenever the record contains affirmative proof supporting the view of each side, we must defer to the board's expertise and experience. *Green* v. *Carder,* 282 Ark. 239, 245, 667 S.W.2d 660, 663 (1984). It is well settled that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues; this may be especially true where such issues may be brought up in a contest between opposing forces in a highly-charged atmosphere. *Arkansas Alcoholic Beverage Control Bd.* v. *King,* 275 Ark. 308, 311, 629 S.W.2d 288, 290 (1982).

Dr. Hollabaugh argues that the decision of the medical board is not supported by substantial evidence because the only expert testimony offered on behalf of the medical board was that of Jim Moss, a pharmacist employed by the Arkansas Department of Health who works as an investigator for the medical board. She points out that Mr. Moss did not testify about the appropriate standard of care for the patients involved in this matter or whether she had violated the standard of care. Dr. Hollabaugh argues that, because there was no expert testimony on the appropriate standard of care or whether it had been violated, the board's decision should be reversed under *Hake* v. *Arkansas State Medical Board,* 237 Ark. 506, 374 S.W.2d 173 (1964). In *Hake,* the appellant argued that the medical board's decision to revoke his license to practice medicine was supported by no expert testimony regarding the appropriate standard of care; therefore, there was no standard by which to determine whether the acts charged amounted to malpractice.

In *Hake* v. *Arkansas State Medical Board*, the supreme court reversed and remanded the decision of the medical board because the record furnished no factual standard for the board's conclusions and no standards by which to determine whether the physician had committed malpractice:

> There is a virtual absence of evidence in the record to sustain the board's findings, as well as no expert testimony to provide a standard for the board's medical opinions. The valuable property rights here involved cannot be taken from appellant upon such questionable compliance with due process.

237 Ark. at 510, 374 S.W.2d at 176.

In reversing the medical board's decision, the supreme court in *Hake* relied on *McKay* v. *State Board of Medical Examiners*, 103 Colo. 305, 86 P.2d 232 (1938). In that case, the Colorado State Medical Board had revoked the license of John McKay to practice medicine on the ground that he was guilty of "grossly negligent or ignorant malpractice" and of "immoral, unprofessional or dishonorable conduct." *Id.* at 307, 86 P.2d at 235. There, the court stated:

> There is no evidence that the drugs prescribed by McKay were not prescribed in good faith. No doubt the amount prescribed and the frequency of prescription might be such that in and of itself it would indicate to one skilled in their proper use that one could not possess ordinary skill as a physician and in good faith so frequently prescribe such quantities. But, as heretofore pointed out, the law under which the board acted, contemplates a review of the board's action by a court presumably not expert in medical matters, with authority in the court to determine whether the board regularly pursued its authority or abused its discretion. Without testimony by an expert the court cannot determine the limits of proper treatment in good faith of one possessing ordinary skill, nor can it assume that the board members out of their own individual knowledge and skill correctly fixed the limits within which one might prescribe in these particular cases and be within the bounds of ordinary care and skill so that good faith might be presumed, and beyond which good

faith and ordinary skill could not both be successfully asserted. Such matters being only within the knowledge of experts must be shown by testimony of experts appearing in the record.

. . . . It does not appear in the evidence that such treatment for a patient in her condition was not proper, judged by sound and recognized medical standards. The board says that in its opinion it was not, but until there was competent evidence to support it the board was not authorized to form such an opinion and exceeded its authority in so doing. The board further found, without regard to any matters of diagnosis or treatment, that writing prescriptions to be delivered in McKay's absence from the state and in prescribing morphine in powdered form, the dose to be approximated by the patient, constituted malpractice. We find no evidence that in cases and under circumstances such as those in which this was done that it was not within the limits of reasonable discretion nor that it was a departure from what might be done by one possessed of reasonable skill in the exercise of ordinary care.

103 Colo. at 314-15, 86 P.2d at 237.

In *Livingston* v. *Arkansas State Medical Board*, 288 Ark. 1, 701 S.W.2d 361 (1986), the supreme court affirmed the medical board's finding that the appellant, Dr. Pat Livingston, had committed "grossly negligent or ignorant malpractice" warranting the suspension of her license to practice medicine for thirty days. The court noted that "malpractice" is defined by Regulation 2 of the medical board to include "any professional misconduct, unreasonable lack of skill or fidelity in professional duties, evil practice, or illegal or immoral conduct in the practice of medicine and surgery." 288 Ark. at 5, 701 S.W.2d at 363. The court noted that, although it had not previously defined "ignorant malpractice," it looked to its consideration of the question of "gross negligence" in other contexts:

We have stated our commitment "to the majority rule that willful and wanton misconduct is, as a matter of law, higher in degree than gross negligence", *St. Louis S.W. Ry. Co.* v. *Clemons, etc.*, 242 Ark. 707, 415 S.W.2d 332

(1967). The U.S. District Court, Western District, Fort Smith Division, has stated that "[g]ross negligence is the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result." *Robinson Ins. & Real Estate Inc.* v. *Southwestern Bell Tel. Co.*, 366 F. Supp. 307 (1973). The district court further explained that the element of willfulness is absent in gross negligence. *Id.*

California has a similar medical licensing statute which includes "gross negligence" as a form of unprofessional conduct. Cal. Bus. & Prof. Code § 2234(b) (Deering 1985). Interpreting this statute, (formerly § 2361) the California Court of Appeal in *Gore* v. *Board of Medical Quality Assur.*, 110 Cal. App.3d 184, 167 Cal. Rptr. 881 (1980), also defined gross negligence as "a want of even slight care, but not necessarily involving wanton or willful misconduct; *in other words*, an extreme departure from the ordinary standard of care." In finding the doctor in that case committed gross negligence, the court held:

> Substantial evidence shows that he failed to exercise the standard of care in diagnosis, monitoring and treatment that is basically and routinely taught to students in medical school. Thus, management of his patient was an extreme departure from the standard of medical care, which we hold to be the equivalent of "want of even scant care" under the circumstances of this case.

> Although the board did not differentiate in its finding between "ignorant malpractice" or "gross negligence" there was substantial evidence of an extreme departure from the ordinary standard of care, which constitutes gross negligence.

288 Ark. at 5-6, 701 S.W.2d at 363. In *Livingston*, however, there was expert testimony that Dr. Livingston's actions had breached the ordinary standard of care in the community.

█ In this case, Mr. Moss, a pharmacist, and Dr. Hollabaugh testified. The other evidence in the record included the medical records of the patients involved in this matter along with

the observations of the medical board's investigator. Also included in the record are the affidavits of two of Dr. Hollabaugh's patients. It is true that Mr. Moss testified about the types, amounts, and frequency of the prescriptions of certain drugs prescribed by Dr. Hollabaugh for these patients. Nevertheless, Mr. Moss did not, and could not, testify as to whether her treatment of these patients was appropriate or whether it violated the ordinary standard of care in the community. Additionally, Dr. Hollabaugh discussed her reasons for prescribing the drugs for these patients and gave much detail about their medical conditions which she felt justified her actions. She also discussed her belief that pain resulting from most medical conditions is not adequately treated by the medical profession. The board correctly states that, traditionally, we accord a great deal of deference to the findings of administrative agencies and points out that the expert credentials of the finders of fact (the medical board members) cannot be discounted. Nevertheless, the record must contain expert testimony establishing the standard of care to which Dr. Hollabaugh is to be held and whether she violated that standard of care. Without evidence in the record that the drugs prescribed for these patients were not therapeutic in nature or that the quantities prescribed were excessive, given the patients' conditions, we cannot affirm the decision of the medical board.

The record does not show that the board conducted any hearing pursuant to Ark. Code Ann. § 25-15-212(c) (Repl. 1992) to stay, pending appeal, enforcement of its disciplinary order of March 12, 1992, which placed Dr. Hollabaugh on probation for one year. Consequently, the matter should now be moot and we will not remand the proceeding through the circuit court back to the board for further proceedings. We reverse and dismiss.

COOPER and MAYFIELD, JJ., agree.