Roy A. FINCH, Jr. *v.* Jim NEAL, Executive Director, Arkansas Supreme Court Committee on Professional Conduct

93-1190 873 S.W.2d 519

Supreme Court of Arkansas
Opinion delivered April 11, 1994

*James L. Sloan*, for appellant.

*Jeff Rosenzweig*, for appellee.

JACK HOLT, JR., Chief Justice. The Arkansas Supreme Court Committee on Professional Conduct (Committee) issued a reprimand to appellant, attorney Roy Finch, for a violation of Rule 8.4(d), Model Rules of Professional Conduct, which provides "it is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice" and that he did so while acting as advocate for Don Jones. Mr. Finch appeals. We affirm the Committee's actions.

Ms. Diana McIntyre Kimbrell (McIntyre) filed a formal complaint with the Committee alleging that Roy Finch, as attorney for her ex-husband Don Jones, committed the following violations of the Model Rules of Professional Conduct:

(1) He knowingly made a false statement of material fact to a tribunal.

(2) He, in the course of representing his client, knowingly made a false statement of material fact to Stephen Cobb.

(3) He engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

(4) He engaged in conduct that is prejudicial to the administration of justice.

Mr. Finch filed an "affidavit in response" with the Committee. An evidentiary hearing was held after which the Com-

mittee, in executive session, unanimously found that Mr. Finch had violated Rule 8.4(d) (incorrectly cited as Rule 8.4(c) in the transcript of the hearing) by engaging in conduct that was prejudicial to the administration of justice. By a vote of six to one, the Committee issued a reprimand to Mr. Finch, with one of its members voting to issue a caution rather than a reprimand.

"Appeals from any action by the Committee after hearing shall be heard *de novo* on the record and the Arkansas Supreme Court shall pronounce such judgment as in its opinion should have been pronounced below." Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law, § 5(H)(3). We affirm the Committee's action unless it is clearly against the preponderance of the evidence and will not reverse its findings unless they were clearly erroneous. *Arens* v. *Committee on Prof. Conduct*, 307 Ark. 308, 820 S.W.2d 263 (1991); *Muhammed* v. *Arkansas Sup. Ct. Comm. on Prof. Conduct*, 291 Ark. 29, 722 S.W.2d 280 (1987); Sexton v. Supreme Ct. Comm. on Prof. Conduct, 299 Ark. 439, 774 S.W.2d 114 (1989).

We are hampered somewhat in our *de novo* review because the Committee did not make specific findings; however, the record of proceedings and the parties' briefs are such that we can, on *de novo* review, determine and resolve the issues before us. The Committee's failure to make specific findings will be dealt with at length as a separate issue in this opinion.

In determining if Mr. Finch engaged in conduct that was prejudicial to the administration of justice, we look first at the chronology of events, beginning with Mr. Finch filing a motion to abate child support on Mr. Jones's behalf, a copy of which was sent to Ms. McIntyre. Accompanying the motion was a letter informing her that "the child support unit here claims that it no longer represents either of you in this matter. Thus I am not including them in the notice." Upon receipt of these materials, she called the Pulaski County Child Support Enforcement Unit (CSEU), which confirmed Mr. Finch's letter; however, she was advised that she could make application to re-open her file, and an application would be sent to her. Upon receiving the application, she returned it, but she claimed at the hearing that a CSEU employee told her that doing so would be futile because of the

short time available to respond to the motion to abate. Relying on this advice, she engaged private counsel, Mr. Maxie Kizer, to represent her, and he filed, on her behalf, a "response to motion," "requests for production," and "counter-petition," noting that Mr. Finch was served with a copy of each.

A few days later, Mr. Finch directed "requests for admissions" to Ms. McIntyre which contained a notation of service on "both attorneys for plaintiff," but he did not respond to Mr. Kizer's pleadings. During this time frame, Mr. Finch prepared an agreed order and submitted it to Steve Cobb, attorney for CSEU, who in turn made modifications, returned the order to Mr. Finch who approved the order and returned it to Mr. Cobb with instructions to file the order of record. Neither Ms. McIntyre nor her counsel, Mr. Kizer, were made aware of these actions.

This agreed order, which in essence discontinued child support to the detriment of Ms. McIntyre on her son's eighteenth birthday, was entered of record on July 10, 1992. On July 14, 1992, Mr. Finch sent a letter, along with a copy of the agreed order, to Mr. Kizer which stated in essence that CSEU was Ms. McIntyre's attorney of record at that time and that the agreed order abating child support was approved by CSEU attorney Steve Cobb on Ms. McIntyre's behalf. Apparently, the first knowledge Ms. McIntyre had as to the entry of the "agreed" order was by this letter of notice, and she surmised that Mr. Finch had persuaded Mr. Cobb to enter an agreed order on her behalf without consulting with her or employed counsel, Mr. Kizer.

As a result, Mr. Kizer filed a motion to set aside the order on July 28, 1992. The chancery court declined to set the order aside, noting that the only way it could do so, would be to determine that the judgment was obtained by fraud. Concluding that the intent of the previous order had been for Mr. Jones to pay child support through high school graduation, the court reinstated child support to Ms. McIntyre because her son had returned to her home and had enrolled in high school.

Meanwhile, the Committee conducted an evidentiary hearing on Ms. McIntyre's complaint against Mr. Finch, at which Ms. McIntyre, CSEU employees Adam Walloch and attorney Steve Cobb, and Mr. Finch testified. Mr. Cobb admitted that he

and Mr. Finch had worked on the order and explained that "there really wasn't an attorney of record" when the final order was entered. He conceded that he had not consulted Ms. McIntyre before approving the final order on her behalf.

Mr. Finch testified that both attorneys seemed to be representing Ms. McIntyre and acknowledged that Mr. Kizer had filed pleadings on Ms. McIntyre's behalf; however, he did not believe it was necessary to involve Mr. Kizer in perfecting the order as Mr. Kizer had never entered an appearance with the chancery court, and the record still showed CSEU as attorney of record. In examining the records of proceedings before us, we observe that they do not contain any information, other than the testimony of Mr. Cobb and Mr. Finch which are inapposite to one another, as to whether or not there was a designated attorney of record during the time frame in question.

### Failure to make special findings

Mr. Finch contends that the Committee committed error by refusing to make special findings of fact and conclusions of law; however, in examining the record we note that Mr. Finch's request was general and somewhat nebulous in nature:

Mr. Finch: "May we request special findings?"

To which the following response was made by a Committee member, Mr. Virden:

> We have never made special findings and we just — we are not finding — I'll say this on the record, I don't think anybody will object: we are not saying that there was a fraud committed. We're saying there was a violation of Rule 8.4(c) [actually, Rule 8.4(d)].

Mr. Finch contends that the Committee committed error by refusing to state facts constituting a violation of Rule 8.4(d) or by failing to explain at the hearing what respondent did that constituted a violation, and that because of this failure, his "due process rights" were violated.

The Committee submits that Mr. Finch has waived this issue because he did not argue below that the failure to make special findings violated his due process rights. It is an elemen-

tary principle of administrative law that an issue must be raised at the hearing below in order to be raised on appeal. *Reed* v. *Alcoholic Beverage Control Div.*, 295 Ark. 9, 746 S.W.2d 368 (1988); *Arkansas Cemetery Bd.* v. *North Hills Memorial Gardens*, 272 Ark. 172, 616 S.W.2d 713 (1981); *Hawthorne* v. *Davis*, 268 Ark. 131, 594 S.W.2d 844 (1980); *Jeffrey Stone Co.* v. *Raulston*, 242 Ark. 13, 412 S.W.2d 275 (1967). However, inasmuch as Mr. Finch asked for "special" findings, we address this issue in a limited manner.

The Committee was established pursuant to Amendment 28 of the Arkansas Constitution which provides, "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law." The Committee is not bound by rules of the court and is not required to strictly adhere to the rules of evidence or the rules of procedure, because "[t]o do so would unduly complicate and probably lengthen the proceedings before the Committee." *Sexton*, 299 Ark. at 447, 774 S.W.2d at 118.

In order to proceed in an orderly fashion, we have established procedural rules, and these rules, on their face, do not require the Committee to make findings of fact. Most pertinent is Section 5(F)(5-6) of the Procedures, which provides:

> (5) At the end of the hearing, the Committee shall hold an executive session to deliberate upon any disciplinary action to be taken.

> (6) The decision of the Committee shall be announced immediately with a statement of the votes of the individual members, if the decision is not unanimous. If a majority of the Committee votes to caution, reprimand, or suspend an attorney, the Committee shall have the Executive Director notify the complainant of the specific action taken against the attorney and file a copy of the letter of caution, reprimand, or suspension as a public record in the office of the Clerk.

In asking for "special findings," we assume Mr. Finch meant findings of fact and conclusions of law for he cites Ark. R. Civ. P. 52 in support of his position, which provides in pertinent part: "If requested by a party, in all contested actions tried upon the

facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58." While this is a correct recital, we have held that the Committee is not bound by rules of the court and is not required to strictly adhere to the Rules of Evidence or the Rules of Procedure. *Sexton, supra.*

Granted, under the circumstances of this case, it would have been appropriate and most helpful for the Committee to have made findings as to Mr. Finch's conduct which was prejudicial to the administration of justice. By doing so, Mr. Finch would have understood the Committee's actions and this court would have been in a better position to evaluate the Committee's findings in our de novo review. Nevertheless, we will review this case on its· record and pronounce such judgment as in our opinion should have been pronounced below.

### Res judicata or collateral estoppel

For his next argument, Mr. Finch contends that because the chancery court found that there was not clear and convincing evidence of fraud justifying setting aside the decree abating child support, then the question of whether he should be sanctioned by the court for fraud or for engaging in "conduct that is prejudicial to the administration of justice" is barred by res judicata or collateral estoppel. As he limits his argument to res judicata, so will we, but we hold that this argument is meritless.

Mr. Finch is correct in his assessment of the basic elements for res judicata, for in *Ward* v. *Davis*, 298 Ark. 48, 765 S.W.2d 5 (1989), we enunciated these elements:

> The claim preclusion aspect of the doctrine bars relitigation in a subsequent suit when: (1) the first suit resulted in a judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action which was litigated or could have been litigated but was not; and (5) both suits involve the same parties or their privies.

*Ward,* 298 Ark. at 50., 765 S.W.2d at 6.

However, Mr. Finch's application of these elements

is erroneous, because he claims that the chancery court's disposition of Ms. McIntyre's motion to set aside the child support order precluded the determination by the Committee of whether he behaved badly as an attorney. The test in determining whether res judicata applies is whether matters presented in a subsequent suit were necessarily within the issues of the former suit and might have been litigated therein; when the case at bar is based on the same events and subject matter as the previous case, and only raises new legal issues and seeks additional remedies, the trial court is correct to find the present case is barred by res judicata. *Arkansas Louisiana Gas Co.* v. *Taylor*, 314 Ark. 62, 858 S.W.2d 88 (1993).

 There are a number of reasons why res judicata does not bar action by the Committee. For instance, although the motion to set aside the decree was founded on allegations of fraud, Ms. McIntyre's complaint to the Committee alleged a number of professional conduct violations: false statement of material fact, dishonesty, fraud, deceit or misrepresentation, as well as conduct prejudicial to the administration of justice. Since the Committee's findings were predicated on conduct prejudicial to the administration of justice, rather than on fraud, Mr. Finch's claim of res judicata in this instance is a non-issue.

### Conduct Prejudicial to the Administration of Justice

For his final argument, Mr. Finch contends that the Committee erred in concluding that he engaged in conduct prejudicial to the administration of justice because the Committee failed to refer to any standard against which to measure his conduct.

To support his argument, Mr. Finch cites a court of appeals decision, *Hollabaugh* v. *Arkansas State Medical Bd.*, 43 Ark. App. 83, 861 S.W.2d 317 (1993), which involved discipline of a physician. The Arkansas State Medical Board placed Dr. Hollabaugh on probation and directed her to refrain from writing certain narcotics prescriptions, and the circuit court affirmed this decision. Citing *Hake* v. *Arkansas State Medical Board*, 237 Ark. 506, 374 S.W.2d 173 (1964), the court of appeals in *Hollabaugh* reversed the circuit court, determining that there was not substantial evidence to support the board's decision:

There is a virtual absence of evidence in the record to sus-

tain the board's findings, as well as no expert testimony to provide a standard for the board's medical opinions. The valuable property rights here involved cannot be taken from appellant upon such questionable compliance with due process.

*Hollabaugh*, 43 Ark. App. at 87, 861 S.W.2d at 319 (citing *Hake*, 237 Ark. at 520, 374 S.W.2d at 176).

However, what Mr. Finch fails to mention is that the court in *Hake* noted, prior to the above-cited passage, that the Medical Board had failed to comply with the Medical Practice Act (now Ark. Code Ann. § 17-93-410 (1987)), which required that "all evidence considered by the Board shall be reduced to writing and available for the purpose of appeal or certiorari to any of the parties of said hearing." *Hake*, 237 Ark. at 520, 374 S.W.2d at 176. There is not such a requirement in the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law.

In conducting a *de novo* review, it is obvious to us that Mr. Finch, while representing Mr. Jones in an effort to obtain an abatement of child support, was made aware that Mr. Jones' ex-wife, Diana McIntyre Kimbrell, had, during the course of the proceedings, employed private counsel in the person of Maxie Kizer to represent her. Although there may have been confusion as to whether she was also represented by CSEU, still, Mr. Finch was well aware of the fact that Mr. Kizer did in fact represent Ms. McIntyre. As mentioned previously, during the time frame in question, Mr. Kizer served Mr. Finch with a response to his motion to abate child support, request for production and a counter petition. Although Mr. Finch did not respond to these pleadings, he did acknowledge Mr. Kizer's participation in this litigation by sending him a request for admissions directed to Ms. McIntyre. In addition, upon obtaining an order abating child support, Mr. Finch sent a letter, along with a copy of the agreed order, to Mr. Kizer.

In short, Mr. Finch was well aware that Mr. Kizer represented Ms. McIntyre during the proceedings to abate child support, and his claim that Mr. Kizer was not the attorney of record at any given moment, which is subject to factual dispute,

is of little consequence under the circumstances. Whether it was intentional or unintentional, the facts remain that Mr. Finch drafted the proposed order, circumvented Ms. McIntyre and her counsel, Mr. Kizer, and negotiated a settlement of these proceedings without the benefit of input from either party. Mr. Finch's conduct under these circumstances was prejudicial to the administration of justice, and for these reasons we affirm the Committee's action.