John W. FINK *v.* James A. NEAL, as Executive Director of the
Supreme Court Committee on Professional Conduct

96–450                                         945 S.W.2d 916

Supreme Court of Arkansas
Opinion delivered May 27, 1997

*Jack, Lyon & Jones, P.A.*, by: *Philip K. Lyon*; and *Kaplan, Brewer & Maxey, P.A.*, by: *Philip E. Kaplan*, for appellant.

*Boyett, Morgan & Killough, P.A.*, by: *Comer Boyett, Jr.*, for appellee.

ROBERT L. BROWN, Justice. Appellant John W. Fink appeals the decision of the Arkansas Supreme Court Committee on Professional Conduct (Committee), which found that he had violated Rule 8.4(d) of the Model Rules of Professional Conduct and issued a letter of caution as the sanction. This matter is appealed to this court under Section 5 of the Procedures of the Court Regulating Professional Conduct of Attorneys at Law. On *de novo* review, we affirm the decision of the Committee.

On September 8, 1991, Ruth James accompanied her brother, John Shelman, to St. Vincent Infirmary (St. Vincent) because he was thought to be having a heart attack. Due to Shelman's physical condition, he was unable to complete the required admission forms at the time of his arrival. His sister, James, filled out certain forms on his behalf, one of which purported to personally guarantee Shelman's payment for services rendered by the hospital. Shelman was released, and he returned on two later occasions for additional observation and tests. It is uncontroverted that James incurred no liability as a result of Shelman's latter two hospital stays.

Shelman subsequently became delinquent in his payments to St. Vincent, and his account was assigned for collection to Independent Service Finance, Inc. (ISF), a corporation which was owned at the time by the hospital. As counsel for ISF, appellant Fink caused a complaint to be filed against James and Shelman on October 7, 1992, for the collection of $13,831.44, which represented the sum due for all three of Shelman's hospital visits. Service was had on Shelman on October 14, 1992. James, however, was not served until November 18, 1992. James filed an answer *pro se* with the Prairie County Circuit Court on November 19, 1992, but did not serve the answer upon either ISF or Fink.

On November 20, 1992, Fink filed a motion for default judgment with the Prairie County Circuit Court. The default judgment, which was signed by the court on November 23, 1992, but filed for record on January 11, 1993, provided in part:

> The Defendants have been duly served with Summons for more than twenty days before this date, as required by law, the Defendants have failed to appear and defend; the Defendant John Shelman, Sr. is indebted to the Plaintiff, by virtue of an account with the Plaintiff, in the total sum of thirteen thousand eight hundred thirty one and 44/100 dollars ($13,831.44).

The judgment was then taken against Shelman in the amount of $13,831.44, but not against James.

Shelman remained delinquent on the account. As a result, on August 26, 1994, Fink caused a writ of garnishment to be issued against James's employer, Capitol Movers. James later contended that she was not sent a copy of the motion for default judgment or served with the writ of garnishment. The Committee found that James was not served with a copy of the motion for default judgment.

On September 8, 1994, Fink sent a letter to the Prairie County Circuit Court in which he moved to amend the default judgment because of a "mistake" in order to clarify that James was jointly liable with Shelman for the sum of $4,729.91, resulting from the first hospital stay. On September 21, 1994, the trial court denied the motion and ruled that it could not amend a judgment against a party due to a clerical mistake without notice to that affected party. In the interim, James filed a *pro se* motion to quash the writ of garnishment or, in the alternative, to set aside the default judgment. On October 4, 1994, Fink again sent a letter to the court moving to amend the default judgment and completed a certificate of service stating that copies of the motion were served on both Shelman and James by U.S. Mail.

On October 26, 1994, Fink sent a letter to James advising her that she had filed a timely answer to ISF's complaint and admitting that a default judgment should not have been entered against her. Fink wrote that he would send an order to the Prairie County Circuit Court that would set aside both the default judgment and the writ of garnishment. That same day, Fink forwarded an order to the circuit court which also provided that the matter would be set for trial at the request of ISF. Fink assured James that any funds that had been garnished would be returned to her.

As a result of these events, James filed a complaint against Fink with the Supreme Court Committee on Professional Conduct and alleged violations of Rules 1.1, 3.3(a)(1), 3.3(d), and 8.4(d) of the Model Rules of Professional Conduct. After this complaint was filed, Fink dismissed the ISF complaint in circuit court without prejudice. In defense of the complaint made by James, Fink testified that he did not receive notice of the fact she had filed an answer to the October 7, 1992 complaint until Octo-

ber 6, 1994. He stated that he employed a "tickler" system in his law office under which a paralegal would count 20 days from service of process, at which time the paralegal was to contact the circuit clerk's office to determine whether an answer had been filed. Fink stated that he required the paralegal to contact the circuit clerk's office in recognition of the fact that many people indebted to ISF would proceed *pro se* and file an answer without complying with the service requirements of the Arkansas Rules of Civil Procedure. Depending upon whether an answer had been filed, Fink would either move for a default judgment or initiate discovery. In this case, Fink stated that he did not know whether his paralegal either failed to contact the circuit clerk's office or received false information from that clerk.

Fink further stated that his file on the case against Shelman and James reflected only that service had been perfected on October 14, 1992. According to the usual practice, separate file notations should have been made that detailed when service was made on each of the named defendants. In this case, only one notation of service completion was made without reference to either defendant. Fink explained that this error, in conjunction with James's failure to serve him with her answer, set in motion the course of events that led to the entry of the default judgment which incorrectly provided both defendants had been summoned 20 days prior and no answer had been forthcoming.

Fink averred that after the default judgment was entered, Shelman made intermittent payments to ISF for a period of time but eventually ceased making payments altogether. As a result, a writ of garnishment was issued to James's employer on August 26, 1994. Fink explained that the writ would not have issued had Shelman continued making payments, and he took issue with James's assertion that she did not receive notice of the writ. Fink acknowledged that had he looked beyond the notations on his ISF file pertaining to Shelman and James, he might have discovered that he did not perfect service on James on October 14, 1992. He recognized that mistakes were made but asserted a lack of intentional misconduct. He further emphasized that he took corrective measures once the facts came to his attention.

Based on the evidence presented at the hearing, the Committee issued a letter of caution to Fink after finding that he had violated Rule 8.4(d) of the Model Rules, which provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice[.]"

■ Fink's salient point on appeal to this court is that the Committee erred in finding a violation of Rule 8.4(d) and further erred in sanctioning him with a letter of caution. He further contends that his actions did not constitute a violation of Model Rules 1.1, 3.3(a)(1), or 3.3(d). On review of a decision of the Supreme Court Committee on Professional Conduct, this court reviews the matter *de novo* on the record and pronounces judgment as if its opinion had been rendered by the Committee. *Mays v. Neal*, 327 Ark. 302, 938 S.W.2d 830 (1997); *Finch v. Neal*, 316 Ark. 530, 873 S.W.2d 519 (1994). This court further affirms the Committee's action unless it is clearly against the preponderance of the evidence and will not reverse the Committee's findings unless they are clearly erroneous.

Two recent cases are probative regarding this court's jurisprudence on Model Rule 8.4(d). *See Clark v. Supreme Court Comm. on Prof'l Conduct*, 320 Ark. 597, 898 S.W.2d 446 (1995); *Finch v. Neal, supra.* In *Clark v. Supreme Court Comm. on Prof'l Conduct, supra*, we affirmed the Committee's suspension of an attorney's law license for a period of six months based on its finding that counsel had violated Model Rules 1.1, 1.3, and 8.4(d). In *Clark*, the plaintiff allegedly sustained a personal injury while she and her husband were visiting the site where their new home was being constructed. Her attorney filed a personal-injury claim on her behalf and on behalf of her husband against the general contractor. The contractor filed a motion to dismiss for improper venue, and an order of dismissal was entered shortly thereafter. Even though her attorney acknowledged receipt of the motion, he averred that he did not learn of the dismissal order until long after the applicable three-year statute of limitation had expired.

From the record, it was clear that counsel knew the motion to dismiss was well-founded because he informed the plaintiffs

that, although they still had a claim, the lawsuit would have to be filed in a different county.

But he did not refile the lawsuit. He explained that he told his clients that they should hire another attorney and that he "didn't tell them that [he] would, but [he] didn't tell them that [he] wouldn't" refile the lawsuit. *Clark v. Supreme Court Comm. on Prof'l Conduct*, 320 Ark. at 599, 898 S.W.2d at 447. However, counsel never terminated the legal relationship, and during 1991, 1992, and 1993, the plaintiffs remained in contact with him about the personal-injury action and his representation of them in other matters. This court affirmed the sanction levied against the attorney because he was the attorney of record and "essentially ignored his clients' case for nearly two years" after the defendant filed a motion to dismiss that counsel knew was meritorious. *Clark v. Supreme Court Comm. on Prof'l Conduct*, 320 Ark. at 601, 898 S.W.2d at 449.

In *Finch v. Neal, supra,* we affirmed the Committee's reprimand of counsel for a violation of Model Rule 8.4(d) in connection with conduct against a party who was not the counsel's client. In *Finch*, counsel filed a motion to abate child support on behalf of the father against his ex-wife. Accompanying the motion was a letter to the ex-wife stating that the Pulaski County Child Support Enforcement Unit (CSEU) no longer represented her and that CSEU would not be included in the notice. She spoke with a CSEU representative who told her that counsel for the father was correct; however, she completed an application to reopen her file and obtain representation from CSEU. Realizing the length of the application process, she also hired a private attorney, who responded to the motion and propounded requests for production and a counter-petition, both of which were served on counsel for the father.

Following these events, the father's attorney propounded requests for admission of facts to the ex-wife and noted that service of the requests was made on "both attorneys for plaintiff." *Finch v. Neal*, 316 Ark. at 534, 873 S.W.2d at 520. Private counsel for the ex-wife filed pleadings and discovery, but the father's counsel did not respond to the pleadings or discovery. During this

period of time, the father's counsel contacted the attorney for CSEU and both agreed to an order for abated child support that was filed for record by CSEU's attorney. Neither the ex-wife nor her private counsel was informed of the agreed order, nor were they aware of the underlying actions taken by the father's counsel and counsel for CSEU. Before the Committee, CSEU's counsel and the father's counsel both testified that there was confusion about who was the ex-wife's attorney of record. Counsel for the father admitted that he knew her private counsel had filed pleadings on her behalf but pointed to the fact that CSEU was also providing her with legal representation. He took the position that notice to the private counsel was not required because that counsel had yet to make an appearance in the chancery court.

On appeal, this court affirmed the finding of a Model Rule 8.4(d) violation and stated:

> *Whether it was intentional or unintentional,* the facts remain that Mr. Finch [father's counsel] drafted the proposed order, circumvented Ms. McIntyre [ex-wife] and her counsel, Mr. Kizer, and negotiated a settlement of these proceedings without the benefit of input from either party. Mr. Finch's conduct under these circumstances was prejudicial to the administration of justice, and for these reasons we affirm the Committee's action.

*Finch v. Neal*, 316 Ark. at 540, 873 S.W.2d at 523 (emphasis added).

In support of a reversal in the case at hand, Fink attempts to distinguish the immediate case from *Finch v. Neal, supra.* He contends that, unlike the situation in *Finch*, the conduct for which he has been sanctioned was undertaken without *actual* knowledge of the underlying facts. He espouses three reasons for his failure to know about James's answer, as he did before the Committee: (1) James failed to comply with the Arkansas Rules of Civil Procedure in not serving him with a copy; (2) his paralegal either failed to comply with his "tickler" system or was misinformed by the circuit clerk; and (3) his paralegal failed to mark the file clearly on the times when both James and Shelman were served with the complaint and summons. Fink admits responsibility for what has occurred, but he urges that his misconduct was not intentional but merely negligent. This, he maintains, is further proven by his vol-

untary implementation of the "tickler" system, which in most cases provides protection to *pro se* litigants.

Fink also distinguishes *Finch v. Neal, supra,* on grounds that Finch never admitted his mistake and did not take corrective measures to minimize the prejudice suffered by the ex-wife. However, Fink asserts that he took corrective measures once the relevant facts came to light. He contends that such action is consistent with the purpose of Model Rule 8.4(d), which is to promote the administration of justice by proscribing unnecessary and inappropriate impediments to the resolution of legal disputes. He opines that punishing his conduct does not further that rule but would only have a chilling effect on attorneys who might otherwise attempt to rectify a previous error.

In stark contrast, the Committee contends that Fink committed a number of mistakes that illustrate his indifference to his obligation as a practicing attorney. The Committee notes: (1) the complaint filed by Fink did not clearly identify the sum of money purportedly guaranteed by James; (2) even assuming that Fink did not know when James's answer was filed, the motion for default judgment was untimely in that it was signed by the court only five days after James was actually served; (3) had Fink looked to the contents of his file, he would have discovered that James was not served until November 18, 1992; (4) the default judgment erroneously provided that James had been served for 20 days and had not answered the complaint; (5) a writ of garnishment was issued based on a default judgment that failed to state that a judgment had been entered against James; and (6) the motion for amended judgment again provided that James had not filed an answer to the complaint. The Committee argues that Fink cannot place the blame on either James, a paralegal, or the Prairie County Circuit Clerk.

It is clear that the Committee did not make a finding of intentional misconduct on Fink's part. Thus, a primary issue in this appeal is whether an attorney can be sanctioned under Model Rule 8.4(d) for what is essentially negligent conduct, and if so, under what standard. This court has already answered the first

question. In *Finch*, we stated unequivocally that intentional misconduct is not a prerequisite for a finding of a Model Rule 8.4(d) violation. Moreover, the case of *Clark v. Supreme Court Comm. on Prof'l Conduct, supra,* indicates that gross negligence in handling a client's affairs is sufficient for disciplinary action under the rule.

In holding that proof of intentional misconduct is not required for a finding that rules of professional conduct have been violated, this court is certainly not alone. For example, the Supreme Court of Oregon provided a persuasive discussion of its equivalent to Model Rule 8.4(d) in *In re Claussen*, 909 P.2d 862 (Or. 1996). The court in *Claussen* concluded: "The focus of the rule is on the *effect* of a lawyer's conduct on the administration of justice, rather than on the lawyer's state of mind when the conduct is undertaken." *In re Claussen*, 909 P.2d at 870 (emphasis in original). *See also In re Simpson*, 645 P.2d 1223 (Alaska 1982)(misrepresentation arising from gross negligence is sufficient for a finding of conduct prejudicial to the administration of justice); *People v. Mills*, 861 P.2d 708 (Colo. 1993)(finding conduct prejudicial to the administration of justice when respondent, whether intentionally or negligently, improperly asserted a lien on his client's estate proceeds); *Florida Bar v. McClure*, 575 So.2d 176 (Fla. 1991)(finding conduct prejudicial to the administration of justice when respondent, whether intentionally or negligently, mismanaged funds to the detriment of estate beneficiaries). *In re Witt*, 583 N.E.2d 526 (Ill. 1991)(an attorney may be disciplined for engaging in conduct prejudicial to the administration of justice though his conduct is based merely upon an honest mistake). *Cf. In the Matter of Anonymous*, 637 N.E.2d 131 (Ind. 1994)(an attorney's transgressions due to simple neglect and inattention to ethical guidelines will not be excused); *State v. Martin*, 646 P.2d 459, 463 (Kan. 1982)("[G]ross carelessness and negligence constitute a violation of the oath of an attorney to 'discharge your duties as an attorney . . . to the best of your knowledge and ability.'"); *Attorney Q v. Mississippi State Bar*, 587 So.2d 228 (Miss. 1991)(sanctions may be imposed based on incompetence, neglect, and other violations short of deliberate or intentional misconduct), *cert. denied*, 502 U.S. 1098 (1992).

■ The guiding principle in this litany of cases appears to be that the level of improper conduct, whether negligent, reckless, or intentional, is relevant to the sanction levied as opposed to the classification of whether the conduct is unethical. *See, e.g., In re Simpson, supra; In re Witt, supra; In re Corboy*, 528 N.E.2d 694, 698 (Ill. 1988)("Evidence showing lack of dishonest intent is usually only appropriate to determine the nature and severity of the sanction imposed."); *State v. Martin, supra; Attorney Griev. Comm'n v. Ficker*, 572 A.2d 501 (Md. 1990).

■ A recent case in Oklahoma that also concerned an asserted Rule 8.4(d) violation in connection with the representation of a collection agency is *State v. Bourne*, 880 P.2d 360 (Okl. 1994). In *Bourne*, the Supreme Court of Oklahoma determined that the Oklahoma State Bar failed to prove a violation of Model Rule 8.4(d) because counsel was forced to rely on information furnished by the collection agency. However, in its analysis, the court looked to Rule 11 of the Federal Rules of Civil Procedure, which is comparable to Ark. R. Civ. P. 11, for guidance. The *Bourne* case is readily distinguishable from the instant case in that ISF was not responsible for Fink's mistakes. However, the Oklahoma Supreme Court emphasized a standard in *Bourne* that we believe is instructive for the case at hand, and that standard is whether Fink's conduct equates to a violation of our Rule 11 of the Rules of Civil Procedure.

■ In analyzing a potential Rule 11 violation, we have stated:

> By the terms employed in the Federal and Arkansas Rules 11, an attorney signing a pleading, motion, or other paper on behalf of a party constitutes a certificate that (1) the attorney made a reasonable inquiry into the facts supporting the document or pleading, (2) he or she made a reasonable inquiry into the law supporting that document to ensure that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (3) the attorney did not interpose the document for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

*Ward v. Dapper Dan Cleaners & Laundry, Inc.*, 309 Ark. 192, 194–195, 828 S.W.2d 833, 835 (1992).

Our assessment of the chain of events in the instant case is that Fink indeed failed to make reasonable inquiry into the facts at critical stages of the Shelman/James litigation, and these failures ultimately led to a writ of garnishment being issued to James's employer for her wages. Had Fink read the file he would have known that James was not responsible for the full amount claimed in the complaint. Had he read the file, he also would have known when James was served. Had he checked with the circuit clerk, he would have known that James answered the complaint. And had he carefully reviewed the default judgment prior to having the writ of garnishment issued, he would have known that judgment was not taken against James and that the writ was clearly in error.

The Preamble to our Model Rules of Professional Conduct states that a "lawyer should use the law's procedures only for legitimate purposes and not to harass and intimidate others." At some point, a series of errors such as we have in the instant case moves beyond mere negligence and enters the realm of harassment and intimidation, whether intentional or not. We do not mean to suggest that every Rule 11 violation equates to a violation of the Model Rules of Professional Conduct. And yet we have no doubt that James was harassed by counsel's actions, and that this conduct qualifies as conduct prejudicial to the administration of justice.

While James as a *pro se* defendant did not serve Fink with her answer and while Fink's paralegal made mistakes, the responsibility for these actions must be laid directly at his feet, as Fink recognizes. We conclude that Fink's actions are sufficient to warrant a finding that they were prejudicial to the administration of justice and sufficient to support the sanction of a letter of caution.

Affirmed.

CORBIN, J., not participating.