Williams Richard COLLIE, IV, M.D. *v.*
ARKANSAS STATE MEDICAL BOARD

06–1042                                    258 S.W.3d 367

Supreme Court of Arkansas
Opinion delivered June 7, 2007

*Friday, Eldredge & Clark, LLP*, by: *Laura Hensley Smith* and *J. Adam Wells*, for appellant.

*Hope, Fuqua & Campbell, P.A.*, by: *William H. Trice, III*, for appellee.

DONALD L. CORBIN, Justice. Appellant William Richard Collie, IV, M.D., appeals the order of the Pulaski County Circuit Court affirming a decision by the Appellee Arkansas State Medical Board (Board) to revoke his license to practice medicine in the State of Arkansas. On appeal, he argues that reversal is warranted because the Board's (1) determination that he violated its Regulation 2.7 was not supported by substantial evidence; (2) decision to revoke his license was arbitrary, capricious, and violative of due process because the Board considered issues and applied standards outside the scope of Regulation 2.7; and (3) decision to revoke his medical license was arbitrary and capricious and constituted an abuse of discretion as it was unduly harsh under all the circumstances of this case. This case was assumed by this court as involving an issue of first impression and substantial public interest; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1) and (4). We affirm the Board's decision as modified.

The record reflects that Dr. Collie began treating B.B., a minor who suffers from autism, in January of 2005. Later that same month, he also began treating B.B.'s mother, S.B.C., who reported feeling stress and anxiety resulting from her role as B.B.'s primary care giver, as well as from her position as a nursing director at Saline Memorial Hospital. In treating S.B.C., Dr. Collie prescribed medications and provided counseling related to her anxiety. According to Dr. Collie, he last treated S.B.C. on May 4, 2005, and their doctor-patient relationship was officially terminated on May 17, 2005, when Dr. Collie sent a letter transferring her care to her primary-care physician. According to S.B.C., she stopped seeing Dr. Collie because she could no longer afford to pay him, as his clinic, the Safe Harbor Clinic, only accepted private

payments. S.B.C. returned to her primary-care physician for treatment, but grew uncomfortable with this doctor, who had a personal relationship with S.B.C.'s husband. According to S.B.C., she then sought to obtain an appointment with a local psychiatrist but could not get an appointment for ten weeks. As a result, Dr. Collie wrote prescriptions refilling S.B.C.'s medications in July 2005.

During the time that Dr. Collie treated S.B.C., she resigned her position at Saline Memorial. She then took a position as a recovery room nurse at Baptist Health Medical Center in Little Rock. In addition, she expressed an interest in working part time at Dr. Collie's clinic. She initially began working as a volunteer at the Safe Harbor Clinic in May of 2005, but became a full-time employee as of June 28, 2005.

In the meantime, a romantic relationship developed between Dr. Collie and S.B.C. According to both of them, this relationship did not begin until June 4, 2005. On August 9, 2005, S.B.C. legally changed her last name to Collie. The couple, who were both married to other people at the time their relationship began, obtained divorces from their spouses and married each other on February 16, 2006.

Dr. Collie appeared before the Board on April 6, 2006. At this hearing, he was questioned about, among other things, the nature of his relationship with S.B.C., including his treatment of her and when he stopped treating her and when he began a romantic relationship with her. Following the hearing, the Board voted to revoke Dr. Collie's medical license after finding that he violated Regulation 2.7, by being romantically and sexually involved with a patient.

Dr. Collie appealed the Board's decision to the circuit court, arguing that there was insufficient evidence to support the Board's finding that he violated the regulation. Further, he argued that the Board acted arbitrarily and capriciously in revoking his license by considering other matters beyond the scope of Regulation 2.7 and, thus, violated his due-process rights. Finally, Dr. Collie argued that the Board's decision to revoke his license was arbitrary and capricious, specifically that it was an overly harsh punishment considering that he had been practicing medicine for over thirty years and had never been the subject of any disciplinary action. The trial court affirmed the Board's decision, noting that it had little leeway to supplant its own decision for that of the Board. This appeal followed.

As his first point on appeal, Dr. Collie argues that the Board's determination that he violated Regulation 2.7 was not supported by substantial evidence. Specifically, Dr. Collie avers that there was absolutely no evidence to support the finding that the doctor-patient relationship with S.B.C. continued through the time of his prescribing medicine for her as late as July of 2005. The Board counters that there was substantial evidence to support its finding and that this court's review is limited, and the Board's decision must not be displaced, even if this court would have made a different choice.

Before addressing the merits of Dr. Collie's arguments, we note that judicial review of a decision by the Board is governed by the Administrative Procedure Act (APA), codified at Ark. Code Ann. § 25-15-212 (Repl. 2002). The appellate court's review is directed, not toward the circuit court, but toward the decision of the agency, because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *Batiste v. Arkansas Dep't of Human Servs.*, 361 Ark. 46, 204 S.W.3d 521 (2005); *Ford Motor Co. v. Arkansas Motor Veh. Comm'n*, 357 Ark. 125, 161 S.W.3d 788 (2004). Our review of administrative decisions is limited in scope. *Williams v. Arkansas State Bd. of Phys. Therapy*, 353 Ark. 778, 120 S.W.3d 581 (2003). When reviewing such decisions, we uphold them if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *Pine Bluff for Safe Disp. v. Arkansas Poll. Control & Ecol. Comm'n*, 354 Ark. 563, 127 S.W.3d 509 (2003).

In determining whether a decision is supported by substantial evidence, we review the record to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Batiste*, 361 Ark. 46, 204 S.W.3d 521; *Ford Motor Co.*, 357 Ark. 125, 161 S.W.3d 788. In doing so, we give the evidence its strongest probative force in favor of the administrative agency. *Id*. The question is not whether the testimony would have supported a contrary finding, but whether it supports the finding that was made. *Arkansas Bd. of Exam'rs v. Carlson*, 334 Ark. 614, 976 S.W.2d 934 (1998). As true for any other fact-finder, it is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *Id*.

Remaining mindful of this standard, we now turn to Dr. Collie's first point on appeal. In its order entered following the April 6 hearing, the Board found the following:

- William Richard Collie, M.D. has testified and admitted in this hearing that he prescribed legend drugs and scheduled medication for patient S.B. as late as July 2005.

- The Board finds that the doctor-patient relationship between William Richard Collie, M.D. and patient S.B. continued through the time of his prescribing for her as late as July 2005.

Subsequently, the Board determined that Collie violated Ark. Code Ann. § 17-95-409(a)(2)(P) (Repl. 2002) of the Arkansas Medical Practices Act in that he violated the Board's Regulation 2.7 by engaging in a relationship with S.B.C. while she was his patient.

Regulation 2.7 provides that the Board may revoke or suspend the medical license of a physician who

engages in sexual contact, sexual relations or romantic relationship with a patient concurrent with the physician-patient relationship; or a licensed physician engaging in the same conduct with a former patient, if the physician uses or exploits trust, knowledge, emotions or influence derived from the previous professional relationship, shows a lack of fidelity of professional duties and immoral conduct, thus exhibiting gross negligence and ignorant malpractice. A patient's consent to, initiation of, or participation in sexual relationship or conduct with a physician does not change the nature of the conduct nor the prohibition.

In its opinion, the Board specifically found that Dr. Collie "engaged in sexual contact, sexual relations and a romantic relationship with a patient concurrent with the physician/patient relationship."

In reviewing the record, we cannot say that the Board erred in determining Dr. Collie violated Regulation 2.7. Indeed, Dr. Collie testified that the romantic relationship with S.B.C. began in June 2005, a fact that was also confirmed by S.B.C. He also admitted to writing prescriptions for S.B.C. in July 2005, after the time the pair became romantically involved. Moreover, we disagree with Dr. Collie's assertion that the Board was required to put forth expert testimony that his action of writing a prescription for

S.B.C. constituted a violation of Rule 2.7. According to Dr. Collie, the Board was required to put on evidence of what standard should be applied and that he breached that standard.

In advancing this argument, Dr. Collie relies on this court's decision in *Hake v. Arkansas State Medical Board*, 237 Ark. 506, 374 S.W.2d 173 (1964), as well as a decision by the court of appeals in *Hollabaugh v. Arkansas State Medical Board*, 43 Ark. App. 83, 861 S.W.2d 317 (1993). In *Hake*, a case involving an allegation of medical malpractice, the appellant argued that the Board's decision to revoke his license to practice medicine was supported by no expert testimony regarding the appropriate standard of care; therefore, there was no standard by which to determine whether the acts charged amounted to malpractice. This court reversed and remanded the decision of the Board because the record furnished no factual standard for the Board's conclusions and no standards by which to determine whether the physician had committed malpractice. In so doing, this court stated

> [t]here is a virtual absence of evidence in the record to sustain the board's findings, as well as no expert testimony to provide a standard for the board's medical opinions. The valuable property rights here involved cannot be taken from appellant upon such questionable compliance with due process.

*Id.* at 510, 374 S.W.2d at 176.

Likewise, *Hollabaugh*, 43 Ark. App. 83, 861 S.W.2d 317, involved the Board's discipline of a physician accused of writing too many prescriptions for addictive or potentially dangerous drugs. The Board placed the appellant on probation and directed her to refrain from writing certain narcotic prescriptions, and the circuit court affirmed this decision. The court of appeals reversed, and citing to *Hake*, determined that there was not substantial evidence in the record to support the Board's decision.

Both *Hake* and *Hollabaugh* are distinguishable from the instant case. In those cases, the doctors at issue were before the Board because of alleged irregularities in their manner and treatment of patients. In other words, they stood accused of violating a standard of care in treating patients; whereas, Dr. Collie is accused of engaging in a personal relationship with a patient. Expert testimony is simply not needed to prove this fact, particularly here

where Dr. Collie admitted to writing prescriptions for S.B.C. after the time he attempted to terminate the physician-patient relationship. Thus, as there was substantial evidence to support the Board's determination that Dr. Collie violated Rule 2.7, we cannot say that its decision in this regard was arbitrary or capricious.

Next, Dr. Collie argues that even if this court determines that the Board's decision was supported by substantial evidence, we must reverse its decision to revoke his license. Specifically, Dr. Collie argues that the decision to revoke was arbitrary, capricious, and violative of his due-process rights because the Board considered issues and applied standards in excess of the scope of Regulation 2.7. In advancing his argument, Dr. Collie points to the fact that he has a property interest in his license to practice medicine and that as a result he cannot be deprived of that interest without prior notice of the reasons for the deprivation. The Board responds that it had the authority to revoke Dr. Collie's medical license upon its finding that he violated one of the Board's regulations and, as such, their decision cannot be arbitrary or capricious.

This court has recognized that the right of a physician to practice his profession and be afforded due process in situations involving the suspension or revocation of his professional license is well established as a protected interest. *Arkansas State Med. Bd. v. Leipzig*, 299 Ark. 71, 770 S.W.2d 661 (1989), *overruled on other grounds by Arkansas State Game & Fish Comm'n v. Sledge*, 344 Ark. 505, 42 S.W.3d 427 (2001) (citing *Missouri ex rel. Hurwitz v. North*, 271 U.S. 40 (1926)). Conversely, this court has also held that administrative proceedings are civil in nature and that the rules of evidence need not be strictly adhered to. *C.C.B. v. Arkansas Dep't of Health & Human Servs.*, 368 Ark. 540, 247 S.W.3d 870 (2007). There, we stated

> [a] hearing before a board does not cease to be fair because rules of evidence and procedure governing judicial proceedings are not followed or evidence has been improperly rejected or received. The hearing cannot be said to be unfair unless the defect might have led to a denial of justice or an element of due process is absent.

*Id.* at 548, 247 S.W.3d at 875-76 (quoting *Piggott State Bank v. State Banking Bd.*, 242 Ark. 828, 837, 416 S.W.2d 291, 297 (1967)).

While we agree with Dr. Collie that certain Board members asked questions or made statements about matters outside the scope of Regulation 2.7, we cannot say that this renders the

Board's decision to revoke his license as arbitrary or capricious.[1] The requirement that the agency's decision not be arbitrary or capricious is less demanding than the requirement that it be supported by substantial evidence. *Batiste*, 361 Ark. 46, 204 S.W.3d 521; *Pine Bluff for Safe Disp.*, 354 Ark. 563, 127 S.W.3d 509. To be invalid as arbitrary or capricious, an agency's decision must lack a rational basis or rely on a finding of fact based on an erroneous view of the law. *Id.* Where the agency's decision is supported by substantial evidence, it automatically follows that it cannot be classified as unreasonable or arbitrary. *Wright v. Arkansas State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992).

Certainly, the Board's order entered after the April 6 hearing recites much irrelevant information, but we cannot ignore the fact that Dr. Collie admitted to writing prescriptions for S.B.C. after the time in which they became romantically involved. This alone was substantial evidence to support the finding that Dr. Collie violated Regulation 2.7, and the Board is allowed to revoke a license based on such a violation. Nor can we say that Dr. Collie's right to due process was violated. Dr. Collie was given notice that he stood accused of violating this regulation and appeared at the hearing, accompanied by counsel, and was allowed to present evidence. Thus, while we cannot say that the Board's decision to revoke Dr. Collie's license was arbitrary or capricious because it considered irrelevant matters, we are more persuaded by Dr. Collie's final argument that the sanction was overly harsh in light of all the facts of this case. Thus, we turn to his final point on appeal.

As his final point on appeal, Dr. Collie argues that if this court determines that there was substantial evidence supporting the Board's decision that he violated Regulation 2.7, its subsequent decision to revoke his license was such a harsh penalty in light of all attendant circumstances that it must be characterized as arbitrary and capricious. The Board does not respond to this argument.

Pursuant to section 25-15-212(h), this court may reverse or modify the Board's decision if the substantial rights of the peti-

---

[1] Indeed, the record reveals that Dr. Collie was questioned about things such as the "adulterous" nature of his relationship with S.B.C., the length of his second marriage, whether he should have waited longer before becoming involved with S.B.C., and whether he was properly practicing behavioral medicine.

tioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion.

We acknowledge that under certain circumstances the penalty imposed by an administrative agency may be so harsh that its imposition may be described as arbitrary and capricious. *Baxter v. Arkansas State Bd. of Dental Exam'rs Bd.*, 269 Ark. 67, 598 S.W.2d 412 (1980) (modifying the board's decision to revoke the appellants' licenses to suspensions of those licenses for a period of eighteen months).

In *Arkansas State Board of Pharmacy v. Patrick*, 243 Ark. 967, 423 S.W.2d 265 (1968), this court reversed a decision by the Arkansas Board of Pharmacy revoking the appellant's pharmaceutical license, despite holding that there was substantial evidence to support the Board's finding that the appellant violated the laws related to the practice of pharmacy. In so doing, this court concluded that the punishment of revocation was arbitrary in light of the fact that the appellant had been licensed for twenty-eight years without any prior violations. This court specifically stated

> [a]t any rate, we think that, to permanently bar an individual from the profession that he studied and prepared himself for, and has practiced for many years, apparently in a law-abiding manner, requires proof that makes it clearly evident that that individual had embarked on a calculated course of willfully violating the law. That has not been established in this case. We think also that it must be recognized that there is a difference in dispensing Enovid, and in dispensing barbiturates and narcotics. It is our view that, under the evidence cited, Patrick should be suspended from practicing pharmacy for the period of one year. Certainly, this should be sufficient to impress upon the mind of this appellee, and others who may have been careless in dispensing drugs, that the laws relating to the practice of this profession must be observed.

*Id.* at 974-75, 423 S.W.2d at 269.

The severity of the punishment in this case is further illuminated when reviewing other cases decided by the Board. In *Livingston v. Arkansas State Medical Board*, 288 Ark. 1, 701 S.W.2d

361 (1986), the appellant was found to have committed "gross negligent or ignorant malpractice" by repeatedly diagnosing over a four-month period that a female patient was pregnant when in fact the patient was not pregnant. As a result, the Board suspended the appellant's license for *thirty* days, and this court affirmed.

Similarly, in *Arkansas State Medical Board v. Grimmett*, 250 Ark. 1, 463 S.W.2d 662 (1971), the appellee was charged with acts of unprofessional conduct, as well as failing to possess the moral character requisite to practice medicine. The facts in that case revealed allegations that the appellee aided and abetted an unlicensed person to practice medicine, that he violated the laws governing the possession and distribution of various controlled substances, and that he engaged in sexual relations with female patients while he prescribed drugs for them. Despite the severity of the evidence against the appellee, the Board merely suspended his license with the stipulation that he could present evidence at the Board's next meeting that might cause the Board to reconsider its actions. On appeal, the circuit court reversed the Board's suspension on the basis that the action was too harsh. This court reversed the circuit court, noting the Board's decision was justified in light of the evidence presented against the appellee.

When we take into consideration the fact that Dr. Collie has been practicing medicine for thirty-four years without a prior blemish on his professional record, we agree with his assertion that the severity of the Board's decision to revoke his license renders it arbitrary and capricious. Even though there was substantial evidence to support the determination that Dr. Collie violated Regulation 2.7, the punishment of revocation is not commiserate with Dr. Collie's offense. This was not a situation where Dr. Collie offered to write the prescriptions in an attempt to induce S.B.C. into a sexual or romantic relationship. Indeed, there was testimony at the hearing that S.B.C. is a strong-willed individual who would not be subjected to the control of another person. Dr. Collie attempted to terminate his professional relationship with S.B.C. prior to the time they began a personal relationship. After their romantic relationship began, however, he subsequently wrote prescriptions for the same drugs that S.B.C. had previously been on for some time. While this evidence supported the Board's determination that he violated Regulation 2.7, it does not support a revocation of his license to practice medicine.

Accordingly, we modify the Board's decision to revoke Dr. Collie's medical license to a suspension of that license for a period of one year.

Affirmed as modified.