In the Matter of Terry A. GILMORE, P.L.S., # 1413, Appellant

v.

The ARKANSAS BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS AND LAND SURVEYORS, Appellee.

No. CA 10–593.

Court of Appeals of Arkansas.

Feb. 23, 2011.

Stephen Barry Niswanger, Little Rock, for appellant.

Christopher R. Hark, Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Terry Gilmore appeals the order of the Pulaski County Circuit Court

affirming the decision by the Arkansas Board of Registration for Professional Engineers and Land Surveyors (the Board) to revoke his Arkansas surveyor license based on its finding that he committed gross negligence in the practice of surveying. Gilmore argues that the Board's decision was arbitrary and capricious and made upon unlawful procedure or affected by other error or law. He also argues that he was improperly denied the opportunity to depose witnesses and take testimony. We affirm.

*Facts*

The surveying job underlying the consumer complaint in this matter was a land survey for Mrs. Evelyn J. Choate, who resided in Evening Shade, Arkansas. Mrs. Choate alleged that in March 2001, she engaged Gilmore to prepare a survey for her to be completed and returned within ninety days of the date upon which she paid him. Gilmore took $1100 from Mrs. Choate but failed to properly file, or to even provide Mrs. Choate with a copy of, the survey. Over two years later, Mrs. Choate, desiring to sell her property, discovered that the plat had not been filed at the county property-records office, and she called Gilmore. Mrs. Choate informed Gilmore of her dissatisfaction and asked for a copy of the completed plat. Gilmore promised to send the plat to her but subsequently took no action and then failed to return her calls. She eventually filed a complaint with the Board.

Gilmore appeared twice before the Board relating to Mrs. Choate's complaint. He made his first appearance on September 23, 2003 (the 2003 hearing), and he was not represented by legal counsel. During the 2003 hearing, then-executive director, J.T. Clements, Jr., indicated that he thought Gilmore was on probation pursuant to a prior Board order, which appellant

claimed was not true. Both the hearing officer and the Board's counsel informed the Board that they were not to consider any such evidence because it had not been presented to the Board in the current matter. Certain Board members nevertheless discussed the comments regarding whether Gilmore was on probation prior to the Board's decision.

Gilmore testified that he had not heard from Mrs. Choate since he finished the survey, and when he received her complaint from the Board, he promptly filed the survey. Gilmore testified that Mrs. Choate never paid him in full, but that as a showing of good will, he waived the remaining $1,300 of his fee after apologizing to her for the delay and filing the survey. Mrs. Choate was not present at the 2003 hearing, but her affidavit was presented to the Board.

The Board fined Gilmore $50 and voted to revoke his license. Gilmore timely appealed the order from the 2003 hearing to the Sharp County Circuit Court on November 12, 2003. Sharp County Circuit Court was not the proper venue for the appeal, and the action there did not stay enforcement of the order.

During the following four years, the Board renewed Gilmore's license each year, even though Gilmore had ceased doing business in Arkansas after the 2003 hearing. Because of the renewals, Gilmore believed that the Board had reconsidered its decision from the 2003 hearing. On October 5, 2007, the Board issued an amended show-cause order and notice of hearing to Gilmore, which demanded that Gilmore appear at a second hearing and show cause why the Board should not enforce its order from the 2003 hearing and revoke his license.

Gilmore appeared before the Board for a second time on November 13, 2007 (the 2007 hearing), and at that time, he was

represented by counsel. At the hearing, Gilmore argued that the Board's prior discussion of his alleged probation was improper, and that such evidence was false. Gilmore also presented evidence of other Board decisions and argued that the Board's punishment was not commensurate with the offense of failing to timely file a survey.

At the conclusion of the 2007 hearing, the Board refused to reconsider its decision from the 2003 hearing and revoked Gilmore's license. Gilmore appealed the Board's decision from the 2007 hearing to the Pulaski County Circuit Court. His appeal of the Board's order from the 2003 hearing was transferred from Sharp County to Pulaski County and consolidated with his appeal of the order from the 2007 hearing.

Gilmore subsequently requested depositions of certain Board members, alleging irregularities not shown by the record; however, the circuit court denied his motion. Gilmore then requested that the circuit court take testimony from those Board members on the same grounds, but the circuit court denied that motion as well.

The circuit court upheld the Board's decisions in its order filed on February 10, 2010. Gilmore timely filed his notice of appeal from the circuit court's final order on March 12, 2010, and this appeal follows.

### Standard of Review & Applicable Statutory Law

When considering a circuit court's review of an administrative agency's decision, the appellate court's review is directed, not toward the circuit court, but toward the decision of the agency. *Collie v. Ark. State Medical Bd.*, 370 Ark. 180, 188, 258 S.W.3d 367, 373 (2007). An appellate court's review of administrative decisions is limited in scope. *Id.* When reviewing such decisions, the appellate court will uphold them if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *Id.* In determining whether a decision is supported by substantial evidence, the court reviews the record to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* In doing so, the court gives the evidence its strongest probative force in favor of the administrative agency. *Id.* A decision of an administrative agency is improper and therefore must be reversed or modified where the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark.Code Ann. § 25–15–212(h) (Repl.2002).

Administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *McQuay v. Ark. State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999). These standards are consistent with the provisions of the Administrative Procedure Act. Ark. Code Ann. §§ 25–15–201 to –214 (Repl. 1996). According to the Act, it is not the role of the circuit courts or the appellate courts to conduct a de novo review of the record; rather, review is limited to ascertaining whether there is substantial evidence to support the agency's decision or whether the agency's decision runs afoul of one of the other criteria set out in section 25–15–212(h). *Ark. Bd. of Exam'rs v. Carlson*, 334 Ark. 614, 976 S.W.2d 934

(1998). This court reviews the entire record in making this determination, and the evidence is given its strongest probative force in favor of the agency's ruling. *Ark. Health Servs. Agency v. Desiderata, Inc.,* 331 Ark. 144, 958 S.W.2d 7 (1998).

The Board is the agency that has been charged by the General Assembly with the responsibility to license and regulate professional engineers and land surveyors practicing in Arkansas. Ark.Code Ann. §§ 17–30–101 to –306 and 17–48–101 to –301 (Repl.2010). In order to carry out this duty, the Board also must determine whether an engineer or land surveyor under its jurisdiction has violated the code section applicable to the Board or the Board's rules. Ark.Code Ann. §§ 17–30–203, 17–48–104, 17–48–205 (Repl.2010). By statute, the Board may, upon notice and a hearing conducted in accordance with the Arkansas Administrative Procedure Act, levy civil penalties against individuals found to be in violation of the state statutes on appraising or the Board's rules. *Id.* See Ark.Code Ann. § 25–15–212. The Board is also authorized to suspend or revoke the license of an engineer or land surveyor found to be in violation of the state statutes or the Board's rules. *Id.* Additionally, the Board is required to revoke the license of a land surveyor found to have been grossly negligent in the practice of surveying. Ark.Code Ann. § 17–48–205(2).

### Discussion

#### I. Was the Board's Decision Arbitrary and Capricious?

The Arkansas Supreme Court has stated that "the penalty imposed by an administrative agency may be so harsh that its imposition may be described as arbitrary and capricious." *Collie,* 370 Ark. at 188, 258 S.W.3d at 373 (citing *Baxter v. Dental Exam'rs Bd.,* 269 Ark. 67, 598 S.W.2d 412 (1980)). In those cases, an appellate court must modify the erroneous rulings. *See Collie* and *Baxter, supra.* But where there is substantial evidence to support the Board's finding that an appellant violated the laws relating to his area of practice, an appellate court may uphold the Board's finding of a violation, but modify the punishment. *See Collie, supra.*

Our supreme court in *Collie* stated that "to permanently bar an individual from the profession that he studied and prepared himself for, and has practiced for many years, apparently in a law-abiding manner, *requires proof that makes it clearly evident that the individual had embarked on a calculated course of willfully violating the law.*" *Collie,* 370 Ark. at 188, 258 S.W.3d at 373 (emphasis added). In order to determine whether a penalty is overly harsh, a court may review other cases decided by the same board. *See id.*

Gilmore alleges that the only previous revocations of licenses by the Board were for offenses significantly more serious than his allegedly untimely filed survey. The Board's records show only three previous revocations of a surveyor's license during the seven years preceding the 2007 hearing. The first revocation, Board case number 03–03, involved an admission to multiple errors in multiple surveys and the entry into a consent judgment with the Board. The individual subsequently violated the consent judgment, which led to the Board's revocation of his license. Next, in an almost identical case, another individual admitted to multiple errors in multiple surveys, and entered into a consent judgment with the Board. That individual also violated his consent judgment, and as a result, the Board revoked his license. Finally, in a 1999 case, the Board revoked an individual's license for multiple errors in multiple surveys.

Gilmore submits that his license was the only license revoked based on a single offense, despite mitigating circumstances and the fact that he was charged with a mere failure to timely file a survey. He urges that no allegation was made as to the quality of the survey itself, noting that a Board member indicated that Gilmore's survey was very detailed and implied that he found no flaws in it. He implores that his alleged wrongdoing simply does not rise to the same level as those by the surveyors whose licenses the Board previously revoked.

Moreover, Gilmore submits that surveyors charged with the same or similar offenses as he was did not have their licenses revoked. He cites twelve separate cases where surveyors ₈were charged with the same or similar offenses and notes that in none of those cases—many involving at least one failure to file a survey and each including multiple offenses—was any surveyor's license revoked. The respective punishments ranged from corrections to erroneous surveys, monetary fines, continuing professional education requirements, unsupervised and supervised probation, to up to a single-year license suspension.

When viewed in light of the Board's prior license revocations and its previous cases involving the same or similar offenses, Gilmore questions the harshness and inconsistency of his punishment. He notes that the Board had never revoked a license for a mere failure to file one survey and had let significantly more egregious offenses pass with much more lenient punishments. Further, he maintains that this decision was contrary to the Board's ordinary policy for first-time offenders, which, according to Board member Engstrom, is to give a "hand slap" for a first infraction. Finally, he claims that the Board presented no "proof that makes it clearly evident

that [Gilmore] had embarked on a calculated course of willfully violating the law," as is required prior to a license revocation under *Collie, supra.*

Gilmore argues that the circuit court erroneously concluded that "[t]here is no substantial evidence that the Board acted in an arbitrary or capricious manner when it determined that [Gilmore's] failure to complete a survey of more than two years, or communicate with his client during that time, constituted gross negligence." Gilmore does not argue that the Board's finding of guilt renders its decision invalid, instead, he contends that the Board's overly harsh punishment shows that its decision was arbitrary and capricious.

Additionally, Gilmore asserts that the circuit court's order misstates key facts. He ₉submits that he did not "fail to complete" a survey, rather that he neglected to file the survey once completed because, due to his divorce proceedings, he was denied access to his records. He contends that the reason he did not speak with his client regarding the problem was because he was unaware of the problem and acknowledges that his first notice of the error was notice of the complaint filed with the Board. Once made aware of the oversight, he apologized profusely, filed the survey, and waived the unpaid balance of his fee.

Ultimately, the circuit court's ruling turned on the Board's argument that the Board found Gilmore guilty of gross negligence and was therefore required to revoke his license. Gilmore claims that this is an incorrect statement of law. Arkansas Code Annotated section 17–48–102(b)(2) (Repl.2010) states that, in lieu of or in addition to any sanction imposed, the Board may assess a civil penalty. Moreover, Gilmore maintains that even if the Board were required to revoke a license

following a finding of gross negligence, that finding would still be arbitrary and capricious because of the Board's disparate treatment and its inability to conform to the standards set forth in its prior decisions.

We disagree. We cannot ignore the fact that Gilmore was not only found guilty under section 17–48–106(a), but was also found to have violated the standards of conduct set out in section 17–48–205. His recitation of numerous other instances of disciplinary actions involving what he deems similar or more egregious violations ignores the fact that the Board found that Gilmore's conduct constituted gross negligence, incompetence, or misconduct. Under the provisions of section 17–48–205, such a finding requires that the Board "shall revoke" the license of the surveyor found guilty of any of these.

The record illustrates that Gilmore did not merely fail to file a single plat. He failed to complete the work for which he was paid. He failed to communicate with the client with whom he contracted. Gilmore gave testimony blaming his computer, his wife, his stepson, his memory, and even the victim. The Board, in its sole purview, found Gilmore not to be a credible witness. *Ark. Bd. of Registr. for Prof'l Geologists v. Ackley,* 64 Ark.App. 325, 984 S.W.2d 67 (1998). The Board determined that Gilmore's contracting to perform work in 2001, with a promise to complete the work in ninety days, combined with Gilmore's failure to complete the work more than two years later, but only when threatened with disciplinary action, constituted gross negligence, incompetence, or misconduct.

Gilmore's examples of other disciplinary hearings are fact-intensive cases and do not address or squarely meet the allegations and factual findings found in this case. The Board's expertise over issues affecting the public trust, along with the Board's authority and discretion to apply this expertise, will not be upended simply because Gilmore has merely offered examples of situations where the Board did not find a particular licensee had violated the public trust under section 17–48–205. *See, e.g., Carlson, supra.* We hold that ample evidence supports the Board's decision.

## II. *Was the Board's Decision Made Upon Unlawful Procedure or Affected by Other Error or Law?*

After the conclusion of Gilmore's testimony at the 2003 hearing, Mr. Brady (presumably a member of the Board at the time) asked Clements, then the Board's executive director, if "Mr. Gilmore [had] been before this board before," to which Clements replied, "Yes." Clements further stated, "I think he's been before this board on more than one instance. And as I recall, *he's still within a probationary period from his last order.*" (Emphasis added.)

Gilmore asserts that this statement, presented to the Board by its own executive director, was not true. Gilmore contends that he was not on probation at the time of the 2003 hearing and that the presentation of inaccurate evidence at the 2003 hearing compels the conclusion that an error of law or unlawful procedure occurred.

Gilmore submits that even if he had been on probation at the time of the 2003 hearing, which he was not, he submits that the Board would not have been entitled to rely on such evidence. There was no such evidence presented by the Board's attorney at the 2003 hearing, and the Administrative Procedure Act states that "[i]n every case of adjudication ... [f]indings of fact shall be based exclusively on the evidence and on matters officially noticed." Ark.Code Ann. § 25–15–208 (Repl.2002).

Tina Watkins, who served as the hearing officer at the 2003 hearing, repeatedly admonished the Board members not to consider any evidence outside the record, including Gilmore's falsely alleged probation, and her admonishments were echoed by the Board's own attorney, Assistant Attorney General Melody Miller. However, Clements, Brady, and Engstrom continued to discuss the issue in some detail. Gilmore was briefly questioned regarding the matter prior to the Board going off the record for deliberations. When the Board went back on the record, it found Gilmore guilty of the offenses charged and revoked his license.

¦₁₂Even though both the hearing officer and the Assistant Attorney General repeatedly admonished the Board that it could not consider any of the alleged prior offenses, Gilmore claims that the Board still took this alleged evidence into account. Gilmore testified at the 2007 hearing that, during the Board's off-the-record discussion, there had been a discussion of the Board's "three strikes and you're out" rule at the 2003 hearing. He notes that even if evidence of alleged prior offenses were admissible, such evidence had not been presented. Moreover, Gilmore reiterates that he had no "strikes" and was not on probation.

Gilmore also takes issue with the Board's argument to the circuit court that the issue regarding improper and false evidence was addressed at the 2007 hearing. He points out that the 2007 hearing was merely a show-cause hearing where the Board decided whether to enforce its previously rendered decision. He maintains that the cloud placed on the 2003 hearing could not be cleared by discussions from the 2007 hearing.

■ We find no merit in Gilmore's allegation that the Board improperly and erroneously considered evidence of a previous disciplinary action against him, and hold that his argument is both unsupported by the record and mooted by the 2007 hearing. There is no basis for Gilmore's contention that during the 2007 hearing the Board was under the misconception that he had previously been disciplined for misconduct. Moreover, it is clear from the record of the 2003 hearing that the Board was instructed not to consider evidence outside the record. There is insufficient evidence before us to support a holding that the Board failed to heed that instruction. Accordingly, we find no error on this point.

■ ¦₁₃Gilmore argues that comments from Board members suggest that the Board's decision was improper. At the conclusion of the 2007 hearing, Engstrom mentioned to Gilmore's counsel that he (Engstrom) wished that Gilmore had been represented by legal counsel at the 2003 hearing. Additionally, Board member Woodrow Turner informed Gilmore and his counsel at the conclusion of the 2007 hearing that the Board was acting unfairly in rendering its decision.

■ Finally, Gilmore questions Board member Ivan Hoffman's economic interest in the decision. In 2007, Gilmore was hired in Oklahoma by Georges Colliers, Inc. (GCI), and South Central Coal Co., Inc. (SCCCI), both underground-mining companies. Prior to hiring Gilmore, GCI and SCCCI employed Hoffman as a surveyor. Gilmore was hired on July 17, 2007, the same date that Hoffman ceased working for GCI and SCCCI. Gilmore notes that the show cause order and notice of hearing issued by the Board is dated July 31, 2007, just two weeks after Gilmore took over Hoffman's surveying work in Oklahoma.

Gilmore argues that the circuit court improperly failed to consider this evidence. He contends that, not only did the circuit

court refuse to permit depositions or allow testimony on the record, it also specifically refused to consider the comments from Turner and Engstrom or Hoffman's conflict of interest. He claims that the circuit court did so even though such evidence clearly demonstrated irregularities in the Board's procedures. Specific members of the Board expressed their displeasure about the Board's procedures, and a Board member directly competed with a surveyor whose license was revoked under what Gilmore claims were suspect circumstances. When combined with the Board's inconsistent punishment and the fact that it considered evidence that was both inaccurate and inadmissible, Gilmore claims that there can be no question that the revocation of his license was affected by other error, and made upon unlawful procedure.

Although Gilmore cites the proximity of the notice of hearing to the date upon which he took over this work for a mining company as evidence of a procedural irregularity, there is nothing in the record to support such a finding. Appellant should have addressed this allegation by filing an affidavit of bias or disqualification under Arkansas Code Annotated § 25–15–213(2)(C). Because he failed to do so, any argument regarding bias has been forfeited. *See City of Hector v. Ark. Soil & Water Conservation Comm'n,* 47 Ark.App. 177, 888 S.W.2d 312 (1994). The burden is on Gilmore to show that there were irregularities that affected the outcome of his hearing, and there is simply nothing in the record to support such a conclusion.

### III. *Denial of Opportunity to Depose Witnesses and Take Testimony*

Gilmore requested depositions of certain Board members, alleging that their post meeting comments regarding the Board's unfairness and Gilmore's lack of representation at the 2003 hearing revealed an irregularity not indicated by the record. Gilmore additionally argued that Hoffman's previously described conflict of interest also constituted such an irregularity, and asked the circuit court to compel the Board to produce its members for depositions. The circuit court denied Gilmore's motion to compel. Gilmore then requested that the circuit court take testimony from the Board members, but the circuit court denied that motion, too.

The Administrative Procedure Act provides that "[t]he review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency not shown in the record, testimony may be taken before the court." Ark.Code Ann. § 25–15–212(g). Implicit in this rule is that a party may depose potential witnesses, as they possess information and knowledge relevant to the administrative appeal.

Gilmore argues that where the very members of the Board express their displeasure about the procedures, and where a board member directly competes with a surveyor whose license is revoked under suspect circumstances, there are sufficient irregularities to warrant testimony before the circuit court. He reiterates that, unfortunately, he was denied such an opportunity to depose or examine witnesses regarding irregularities not shown by the record.

We hold that the circuit court did not err in denying Gilmore's request to depose members of the Board. Gilmore's argument offers no basis for such an assertion because there is insufficient evidence of procedural irregularities before us.

Affirmed.

VAUGHT, C.J., and MARTIN, J., agree.