2011 Ark. App. 695

**The LAMAR COMPANY, LLC d/b/a Lamar Advertising of Greenville, Appellant**

v.

**ARKANSAS STATE HIGHWAY AND TRANSPORTATION DEPART- MENT, Appellee.**

**No. CA 10–1170.**

Court of Appeals of Arkansas.

Nov. 16, 2011.

Rehearing Denied Jan. 11, 2012.

Michael Norris Shannon, Joseph R. Falasco, R. Ryan Younger and Robert L. Wilson, Little Rock, for appellant.

Michelle Lee Davenport, Little Rock, for appellee.

JOSEPHINE LINKER HART, Judge.

The Lamar Co., LLC d/b/a Lamar Advertising of Greenville (Lamar) appeals from the circuit court's order affirming the Arkansas State Highway Commission's decision to affirm appellee Arkansas State Highway and Transportation Department's (AHTD) decision to deny Lamar's request to renew permits for twenty-seven billboards because Lamar failed to timely renew the permits. On appeal, Lamar argues that the circuit court erred in not remanding the case to the Commission so it could consider a change in renewal deadlines, that the circuit court erred in not conducting a de novo review, and that the Commission's decision was arbitrary, capricious, and an abuse of discretion. We affirm.

In 1997, the highways adjacent to the property on which these billboards are located were designated by AHTD as "scenic byways." Pursuant to federal law, billboards cannot be erected on "scenic byways" unless they conform to federal guidelines. 23 U.S.C. § 131(g) (2006). None of these guidelines are met by the billboards in question. 23 U.S.C. § 131(c). Nevertheless, federal statutes and regulations allow states to adopt "grandfather clauses," which allows signs lawfully erected prior to a change in regulations to remain but are then classified as "nonconforming." 23 U.S.C. § 131(o); 23 C.F.R. § 750.707(c) (2011).[1] The regulations de-

---

1. Section 750.707(c) reads as follows:
   (c) Grandfather clause. At the option of the State, the agreement may contain a grandfather clause under which criteria relative to size, lighting, and spacing of signs in zoned and unzoned commercial and industrial areas within 660 feet of the nearest edge of the right-of-way apply only to new signs to be erected after the date specified in the agreement. Any sign lawfully in existence in a commercial or industrial area on such date may remain even though it may

fine a nonconforming sign as "[o]ne which was lawfully erected, but which does not comply with the provisions of State law or State regulations passed at a later date or which later fails to comply with State law or State regulations due to changed conditions." 23 C.F.R. §§ 750.303(e), 750.707(b).[2] Other regulations provide that, for a nonconforming sign to be continued and maintained, it "must have been lawful on the effective date of the State law or regulations, and must continue to be lawfully maintained." 23 C.F.R. § 750.707(d). Thus, under federal law, Lamar's billboards at issue would be deemed "nonconforming."

The Arkansas Highway Beautification Act, codified at Arkansas Code Annotated §§ 27–74–101 to –502 (Repl.2010), was adopted pursuant to this congressional directive. Our General Assembly vested the State Highway Commission with regulatory authority to enforce the Act. Ark.Code Ann. §§ 27–74–203, 27–74–211. State law thus acknowledges the federal law's limitations on the erection of billboards on scenic byways. *See* Ark.Code Ann. § 27–74–204(c). Further, state law reflects that nonconforming billboards may be granted exceptions. *See* Ark.Code Ann. § 27–74–204(b).

AHTD regulations provide two different types of permits, Class A permits for conforming devices and Class B permits for existing nonconforming devices. *See* Revised Regulations for Issuance of Permits for Outdoor Advertising Devices and Signs, Section 3, p. 21. Class B permits, the type of permits issued for the twenty-seven billboards in question, are subject to

renewal on a biannual basis in December of even-numbered years. Under the regulations in force at the time, if permits were not renewed by December 31, the permit holder could still renew the permits by January 31 following the renewal date.

By letter dated November 30, 2004, Lamar was notified of the need to renew its Class B permits by December 31, 2004. Lamar failed to request renewal or pay the renewal fee for its permits until February 28, 2005. The untimely applications were denied. AHTD then informed Lamar that it could request new permits for the billboards. Lamar followed that advice and applied for new permits. However, AHTD denied Lamar's new requests on the basis that its agreement with the federal government would not allow it to grant new Class B permits for signs along a scenic byway. Lamar appealed that decision to the Arkansas State Highway Commission, and a hearing was held on February 7, 2006.

After the hearing, but before the Commission released its decision, the Commission issued a Minute Order on February 22, 2006, that authorized AHTD to issue regulations that made uniform the renewal processes for various types of permits. AHTD adopted regulations that provided:

Commencing December 2006, and each year thereafter, if the renewal application and fee are not received from the permit-owner by December 31, a second renewal notice will be sent to the permit-owner granting until January 31 to renew the permit.

---

not comply with the size, lighting, or spacing criteria. This clause only allows an individual sign at its particular location for the duration of its normal life subject to customary maintenance. Preexisting signs covered by a grandfather clause, which do not comply with the agreement criteria have the status of nonconforming signs.

**2.** Section 303(e) goes on to provide that illegally erected or maintained signs are not nonconforming signs while section 707(b) provides some examples of what are changed conditions.

If the renewal application and fee are not received from the permit-owner by January 31, a third renewal notice will be sent by certified mail stating that the permit has expired and a renewal application and fee must be received by the Arkansas State Highway and Transportation by the thirtieth day after January 31....

If the renewal application and fee are not received from the permit-owner by the thirtieth day after January 31, then the sign must be removed.

The new regulation thus extended the deadline by an additional thirty days past what was contemplated by the old regulation. Thus, had the regulation been in effect at the time Lamar sought renewal, its applications would have been timely.

On February 6, 2007, the Commission entered its order on Lamar's appeal. It found that Lamar untimely submitted its applications for renewal of its Class B permits on February 28, 2005. The Commission also concluded that, because the highways were scenic byways, the billboards became illegal after the expiration of their permits on December 31, 2004. It further concluded that the state was not required to pay compensation for the removal of illegal billboards. Accordingly, the Commission affirmed AHTD's decision to deny Lamar's permit applications.

On February 27, 2007, Lamar filed its petition seeking judicial review of the Commission's order. On May 31, 2007, Lamar filed a motion asking the circuit court to remand the case to the Commission so that the Commission could consider and give retroactive effect to the February 22, 2006 Minute Order and regulations. Lamar argued that the Minute Order should be given retroactive effect because it was procedural and remedial. After a hearing, the circuit court denied the motion to remand, finding that the Minute

Order and new regulations were not relevant.

Lamar amended its petition for review. The petition alleged that Lamar's interests in the billboards were constitutionally protected by the Arkansas Constitution and, therefore, Lamar was entitled to a de novo review pursuant to Ark.Code Ann. § 27–74–203. In the alternative, Lamar sought to appeal pursuant to the Arkansas Administrative Procedure Act.

The circuit court entered an order finding that substantial evidence supported the Commission's decision affirming AHTD's determination and that it was neither arbitrary and capricious nor an abuse of discretion. Further, the court affirmed the Commission's decision to deny compensation and found that Lamar was not entitled to a de novo review of the Commission's decision.

Review of administrative agency decisions, by both the circuit court and the appellate courts, is limited in scope. *See Seiz Co. v. Arkansas State Highway & Transp. Dep't*, 2009 Ark. 361, 324 S.W.3d 336. The standard of review to be used by both the circuit court and the appellate court is whether there is substantial evidence to support the agency's findings. *See id.* The appellate court's review is directed, not toward the circuit court, but toward the decision of the agency, because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *See id.* When reviewing such decisions, we uphold them if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *See id.* We review issues of statutory interpretation de novo; however, the interpretation placed on a statute or regulation by an agency or department

charged with its administration is entitled to great deference and should not be overturned unless clearly wrong. *See id.*

Lamar first argues that the circuit court erred in failing to remand this case to the Commission so that, under the new renewal deadlines, its applications for renewal of its permits would be considered timely. The general rule is that, unless expressly stated otherwise, statutes and regulations are presumed to apply only prospectively, unless they are remedial or procedural. *See JurisDictionUSA, Inc. v. Loislaw.com, Inc.,* 357 Ark. 403, 183 S.W.3d 560 (2004). Here, the regulation specifically provides that it commences with renewals in December 2006, indicating that it was intended to operate prospectively only. *See Steward v. Statler,* 371 Ark. 351, 266 S.W.3d 710 (2007); *JurisDictionUSA, supra.* Therefore, the circuit court did not err in not remanding the case to the Commission for consideration of the regulation and its effect on Lamar's applications.

In its second point, Lamar argues that the circuit court erred in not conducting a de novo hearing under Ark.Code Ann. § 27–74–203(c), which provides in part as follows:

Any person whose business or property has been injured by a final adverse decision from the commission shall be entitled to a judicial hearing de novo ... in the Pulaski County Circuit Court if the interests affected by the decision of the commission are constitutionally or statutorily preserved, or preserved by private agreement, so that their enforcement is a matter of right.

In *Lamar Outdoor Advertising, Inc. v. Arkansas State Highway & Transportation Department,* 84 Ark.App. 72, 133 S.W.3d 412 (2003), we held that Lamar was not entitled to a de novo appeal to circuit court because its right to a permit to erect a billboard was not statutorily protected. Lamar argues that *Lamar Outdoor Advertising* is inapplicable because it involved the erection of a billboard, not the denial of a renewal permit. The present case is similar to the earlier case, however, because compliance with the regulations is required in order to either erect or maintain a billboard. Ark. Code Ann. § 27–74–203(a). Moreover, our supreme court has said that

[t]he outdoor advertising sign ... is not maintainable as a matter of right; such signs have been prohibited altogether. See the extended discussion in *General Outdoor Adv. Co. v. Department of Public Works,* 289 Mass. 149, 193 N.E. 799 (1935).

*Board of Adjustment v. Osage Oil & Transp., Inc.,* 258 Ark. 91, 94, 522 S.W.2d 836, 838 (1975); *see also Donrey Commc'ns Co. v. Fayetteville,* 280 Ark. 408, 660 S.W.2d 900 (1983).

Lamar also argues that it is entitled to de novo review under section 27–74–203(c) because its rights are statutorily preserved by section 27–74–208, which requires payment of compensation when AHTD requires the removal of a billboard.[3] Section 27–74–208 provides in pertinent part as follows:

(a) The State Highway Commission is authorized and empowered to require the removal of all outdoor advertising signs, displays, and devices not in conformity with this subchapter, which right may be enforced by means of a mandatory injunction or other appropriate remedy.

....

---

3. Lamar also relies on a comparable provision of federal law that also requires just compensation. *See* 23 U.S.C. § 131(g) (2006).

(c) Compensation shall be paid for the taking from the owner of any sign, display, or device, of all right, title, leasehold, and interest in any sign, display, or device, and the taking from the owner of the real property on which the sign, display, or device is located, of the right to erect and maintain any signs, displays, and devices thereon.

Ark.Code Ann. § 27–74–208(a), (c). It is important to note that the decision under review is the denial of renewal permits, not a takings claim. At this point, AHTD has not ordered Lamar to remove the billboards and Lamar has not filed a claim seeking compensation from AHTD, either before the Commission or the circuit court. Until that happens, Lamar's argument about being entitled to compensation is premature, as is its claim to entitlement to a de novo hearing on compensation. Thus, Lamar's right to a permit was not statutorily or constitutionally protected, and it was not entitled to de novo review of the decision denying its renewal permits.

▮ Finally, Lamar argues that the commission's decision to deny the permits was arbitrary and capricious because it was based on an erroneous view of the law. This point has several parts. The requirement that the agency's decision not be arbitrary or capricious is less demanding than the requirement that it be supported by substantial evidence. *Collie v. Arkansas State Med. Bd.*, 370 Ark. 180, 258 S.W.3d 367 (2007). To be invalid as arbitrary or capricious, an agency's decision must lack a rational basis or rely on a finding of fact based on an erroneous view of the law. *Id.* Where the agency's decision is supported by substantial evidence, it automatically follows that it cannot be classified as unreasonable or arbitrary. *Id.*

▮ Under this point, Lamar first argues that its signs were misclassified as "nonconforming," based on the designation of several of the highways on which they were located as "scenic byways" in 1997. Lamar relies on Ark.Code Ann. § 27–74–204(c):

(c) The erection of outdoor advertising signs, displays, and devices along a scenic byway shall be limited to those permitted by 23 U.S.C. § 131(c).

Based on this language, Lamar argues that nothing in section 131 prohibits the maintenance of signs already erected. It also argues that neither state nor federal law prohibits the maintenance of a billboard lawfully erected before the highway to which it is adjacent was reclassified as a "scenic byway." As already noted, however, section 131(c), by its terms, limits billboards to only directional and official signs within view of the highways. *See State of South Dakota v. Adams*, 587 F.2d 915, 917 n. 3 (8th Cir.1978). In *Arkansas State Highway and Transportation Department v. Kidder*, 326 Ark. 595, 933 S.W.2d 794 (1996), our supreme court noted that permits are required and, without a permit, a billboard cannot be lawfully maintained. Lamar's signs were initially lawfully erected and permitted. Conditions changed in 1997 when the highways were redesignated as scenic byways. Lamar continued to renew the Class B permits for those signs until December 2004, when it failed to timely submit renewal applications. Upon the failure to renew the permits, they expired. Thus, the billboards could not be lawfully maintained without permits.

▮ Lamar next argues that it was entitled to notice sent by certified mail pursuant to Ark.Code Ann. § 27–74–207. This issue is not preserved for appeal because Lamar did not obtain a ruling on the issue of the applicability of section 27–74–207 from the Commission. The only statement contained in the agency's ruling pertaining to notice was that Lamar was properly notified that its permits had been

changed to Class B permits. It is well settled that we will not set aside an administrative determination on a ground not presented to the administrative agency because to do so would deprive the agency of the opportunity to consider the matter, make its ruling, and state the reasons for its action. *See Seiz Co., supra.* This preservation rule applies even though Lamar raised the issue in the circuit court. *Arkansas Bd. of Examiners in Counseling v. Carlson,* 334 Ark. 614, 976 S.W.2d 934 (1998).

Lastly, Lamar argues that the Commission erred in excluding evidence of AHTD's discriminatory practices. Lamar argues that it was arbitrary and capricious for the agency not to consider all relevant and material evidence.

Lamar sought to have Larry Long, the head of AHTD's Beautification Section for more than twenty years, testify as to two active Class B permits that were apparently issued after a Class A permit was not timely renewed or a change in conditions occurred. The hearing officer excluded the evidence as being irrelevant. Lamar then proffered Long's testimony and the applications for the two permits.

Administrative action may be viewed as arbitrary and capricious only when it is not supported by any rational basis. *Partlow v. Arkansas State Police Comm'n,* 271 Ark. 351, 609 S.W.2d 23 (1980). It appears that the two permits identified by Long were for signs located within city limits in commercial zones. On the other hand, Lamar's permits were for signs adjacent to scenic byways for which no new permits could be issued. It was Lamar's burden to show that it was similarly situated to the other permit holder so that there would be no rational basis for the difference in treatment. *Pine Bluff for Safe Disposal v. Arkansas Pollution Control & Ecology Comm'n,* 354 Ark. 563, 127 S.W.3d 509 (2003). It did not do so.

Based on the differences in the facts surrounding the two permits discussed in the proffer and the lack of evidence showing that Lamar was similarly situated, we cannot say that the agency was arbitrary or capricious in not considering the evidence.

Affirmed.

GRUBER and BROWN, JJ., agree.