(1) In violation of constitutional or statutory provisions;
(2) In excess of the agency's statutory authority;
(3) Made upon unlawful procedure;
(4) Affected by other error or law;
(5) Not supported by substantial evidence of record; or
(6) Arbitrary, capricious, or characterized by abuse of discretion.
Ark. Code Ann. § 25-15-212(h) (Repl. 2014).
On appeal, an appellate court's review is directed not toward the circuit court's order, but toward the order of the agency, because we have held that administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts to determine and analyze legal issues affecting their agencies. Voltage Vehicles v. Ark. Motor Vehicle Comm'n , 2012 Ark. 386, 424 S.W.3d 281. Our review of administrative decisions, however, is limited in scope. Id. When reviewing such decisions, we uphold them pursuant to the APA if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. Id.
On appeal, Dr. Ahmad first argues that the Arkansas Board's decision to revoke his medical license is not supported by substantial evidence, or is affected by other error or law, because the evidence does not show that he violated Arkansas Code Annotated section 17-95-409(a)(2)(R) by violating an Alaska statute, rule, or regulation. Specifically, he asserts that the evidence shows that Alaska merely initiated disciplinary proceedings against him; he claims that the Alaska Board never issued a final decision on whether he violated an Alaska statute or regulation.
Arkansas Code Annotated section 17-95-409(a)(1) states that the Arkansas Board may revoke an existing license in *229 the event the holder has committed any of the acts or offenses defined to be unprofessional conduct. Subsection 409(a)(2)(R) defines unprofessional conduct as "having been found in violation of a statute or a rule governing the practice of medicine by a medical licensing authority or agency of another state." Alaska Statute sections 08.64.326(a)(8)(A) and (a)(9) state that the Alaska Board may impose a sanction if the board finds after a hearing that a licensee has demonstrated "professional incompetence,[3] gross negligence, or repeated negligent conduct" or has engaged in "unprofessional conduct."[4] Here, following a hearing, the ALJ in Alaska found that the Division had met its burden of demonstrating that Dr. Ahmad's opioid prescribing practices violated both subsections 326(a)(8)(A) and (a)(9). The Alaska Board then adopted the findings of the ALJ. Thus, there is sufficient evidence that Dr. Ahmad violated an Alaska statute.
Dr. Ahmad claims that the ALJ's decision applied only to whether there was sufficient evidence to impose a summary suspension under Alaska Statute section 08.64.331(c). In other words, he argues that the ALJ's decision, and thus the Alaska Board's adoption of it, determined only that the summary suspension was proper and was not a final decision on whether he violated a statute. Dr. Ahmad's argument is misplaced.
The ALJ stated that "[u]nless overturned, a summary suspension under AS 08.64.331(c) then remains in place until resolution of disciplinary proceedings under AS 08.64.331(a)." Subsection 331(c) states as follows:
The [Alaska] board may summarily suspend a license before final hearing or during the appeals process if the board finds that the licensee poses a clear and immediate danger to the public health and safety if the licensee continues to practice. A person whose license is suspended under this section is entitled to a hearing conducted by the office of administrative hearings not later than seven days after the effective date of the order, and the person may appeal the suspension after a hearing to a court of competent jurisdiction.
Subsection 331(a) provides:
If the [Alaska] board finds that a licensee has committed an act set out in AS 08.64.326(a), the board may
(1) permanently revoke a license to practice;
(2) suspend a license for a determinate period of time;
(3) censure a licensee;
(4) issue a letter of reprimand;
(5) place a licensee on probationary status and require the licensee to
(A) report regularly to the board on matters involving the basis of probation;
(B) limit practice to those areas prescribed;
(C) continue professional education until a satisfactory degree of skill has been attained in those areas determined by the board to need improvement;
*230 (6) impose limitations or conditions on the practice of a licensee;
(7) impose a civil fine of not more than $25,000; or
(8) impose one or more of the sanctions set out in (1)-(7) of this subsection.
Alaska Stat. Ann. § 08.64.331(a) (West 2017).
Accordingly, in this case, the ALJ decision, and thus the Alaska Board's adoption of the decision, definitively decided that Dr. Ahmad violated the Alaska statutes. The decision merely left the issue of a final disciplinary sanction unresolved, and Dr. Ahmad voluntarily surrendered his Alaska license before the Alaska Board issued the final sanction. Further, Dr. Ahmad did not appeal the Alaska Board's decision to the Alaska courts. Thus, the Alaska Board found that Dr. Ahmad had violated Alaska statutes. We therefore hold that there was substantial evidence, and the decision was not affected by other error or law, for the Arkansas Board to revoke Dr. Ahmad's Arkansas medical license for a violation of Arkansas Code Annotated section 17-95-409(a)(1).
Dr. Ahmad next argues that the Arkansas Board's procedure for revoking his medical license was arbitrary, capricious, and characterized by an abuse of discretion. Specifically, he takes issue with the following actions of the Arkansas Board: (1) the issuance of the emergency order on May 19, 2016, suspending his license; (2) the refusal to reinstate his license on June 2, 2016, despite his surrender of his DEA license; (3) the reinstatement of his license on August 4, 2016, based on the fact that he surrendered his DEA license; and (4) the permanent suspension of his Arkansas license on October 13, 2016. He argues that the allegations against him did not change between May 19, 2016, and August 4, 2016, and if his surrender of his DEA license satisfied the Arkansas Board in August, the surrender should have satisfied it in June. He claims the Arkansas Board's decision was not well-reasoned or well-considered.
The requirement that the agency's decision not be arbitrary or capricious is less demanding than the requirement that it be supported by substantial evidence. Collie v. Ark. State Med. Bd. , 370 Ark. 180, 258 S.W.3d 367 (2007). To be invalid as arbitrary or capricious, an agency's decision must lack a rational basis or rely on a finding of fact based on an erroneous view of the law. Id. Where the agency's decision is supported by substantial evidence, it automatically follows that it cannot be classified as unreasonable or arbitrary. Id.
While the Arkansas Board's decision to temporarily reinstate Dr. Ahmad's license gives us pause, the interim period between the emergency order and the final decision to revoke his license resulted from the pending disciplinary proceedings in Alaska. Further, when the Arkansas Board received verification that the Alaska proceedings resulted in a finding that Dr. Ahmad had violated Alaska law, the Arkansas Board then revoked his medical license for a violation of Arkansas Code Annotated section 17-95-409(a)(1). As we have already discussed, the evidence is sufficient to show that Dr. Ahmad violated subsection 409(a)(1). Accordingly, we cannot say that the Arkansas Board's decision was arbitrary, capricious, or characterized by an abuse of discretion.
Dr. Ahmad lastly argues that the Arkansas Board's decision was unduly harsh because there was no evidence that he engaged in any acts of misconduct or demonstrated lack of professional judgment in his treatment of Arkansas patients. Our supreme court has acknowledged *231 that under certain circumstances the penalty imposed by an administrative agency may be so harsh that its imposition may be described as arbitrary and capricious. Collie , 370 Ark. 180, 258 S.W.3d 367. Our supreme court has stated that "to permanently bar an individual from the profession that he studied and prepared himself for, and has practiced for many years, apparently in a law-abiding manner, requires proof that makes it clearly evident that that individual had embarked on a calculated course of willfully violating the law." Id. at 188, 258 S.W.3d at 373 (quoting Ark. State Bd. of Pharmacy v. Patrick , 243 Ark. 967, 974-75, 423 S.W.2d 265, 269 (1968) ).
In this case, the evidence presented before the ALJ in Alaska showed that pharmacists had reported high volumes of Dr. Ahmad's patients with prescriptions for high-dosage opioids and controlled substances without visible symptoms[5] and that an independent pain-management expert, Dr. Brett R. Stacey, found that Dr. Ahmad's physical-exam findings did not support the specific diagnoses listed in the patient records and that Dr. Ahmad refused to consider nonopioid treatments. Dr. Ahmad's scheduling records in Alaska showed that between August 15 and August 18, 2015, Dr. Ahmad saw 32 patients but wrote 81 separate prescriptions for controlled substances; in September 2015, he saw 54 patients in a three-day period but wrote 138 separate prescriptions for controlled substances; in October 2015, he saw 76 patients in a three-day period but wrote 175 separate prescriptions for controlled substances; in November 2015, he saw 124 patients in a three-day period but wrote 229 separate prescriptions for controlled substances; and in December 2015, he saw 179 patients in a four-day period but wrote 166 separate prescriptions for controlled substances. Dr. Stacey reported that Dr. Ahmad's prescribing pattern is far afield from any known or accepted medical-practice guideline. Given this overwhelming evidence showing repeated, willful violations of Alaska law, we cannot say that the Arkansas Board's decision to revoke Dr. Ahmad's Arkansas license was unduly harsh.
Affirmed.
Vaught and Hixson, JJ., agree.

Title 12 of the Alaska Administrative Code section 40.970 defines professional incompetence as "lacking sufficient knowledge, skills, or professional judgment in that field of practice in which the physician or physician assistant concerned engages, to a degree likely to endanger the health of his or her patients."

Title 12 of the Alaska Administrative Code section 40.967 defines unprofessional conduct as "an act or omission by [a] licensee that does not conform to the generally accepted standards of practice for which ... the licensee is authorized to practice under AS 08.64."

One pharmacist reported that, in a single morning, he turned away eighteen of Dr. Ahmad's patients, all seeking to fill prescriptions of high-dose opioids and other controlled substances.